MARKETING RESEARCH SERVICES, INC., APPELLANT, *v.* PUBLIC UTILITIES COMMISSION OF OHIO, APPELLEE.

[Cite as Marketing Research Services, Inc. *v.* Pub. Util. Comm. (1987), 34 Ohio St. 3d 52.]

(No. 86-1883—Decided December 23, 1987.)

*Taft, Stettinius & Hollister* and *Henry N. Thoman,* for appellant.

*Anthony J. Celebrezze, Jr.,* attorney general, *Robert S. Tongren* and *Keith A. Ganther,* for appellee.

*Per Curiam.* This case presents two distinct issues for our review and determination. The first is whether the Supremacy Clause of the United States Constitution (Clause 2, Article VI) and the Federal Communications Act of 1934 ("the 1934 Act") preclude the PUCO from exercising jurisdiction over a complaint concerning the rendition of interstate communications service provided under interstate tariffs. We hold that the 1934 Act and the Supremacy Clause do preclude PUCO jurisdiction in the case *sub judice.* The second issue is whether the PUCO may properly exercise jurisdiction over a complaint where the matter involves a contractual dispute between a utility and a customer. We reaffirm our earlier holdings that the PUCO does not have jurisdiction to entertain complaints over contractual disputes.

I

The PUCO's August 5, 1986 entry concluded that:

" * * * [T]his matter should be dismissed. The instant controversy involves solely interstate services provided under interstate tariffs. While it is true that those services were contracted for in Ohio, that does not change the fact that *this Commission has no jurisdiction over strictly interstate telecommunications services.*" (Emphasis added.)

Although the entry contains no analysis or discussion in support of its conclusion, the motions to dismiss filed by AT&T Communications and Cincinnati Bell raised arguments which essentially stated that the PUCO was precluded from exercising jurisdiction over MRS's complaint by virtue of the Commerce Clause of the United States Constitution, and because the 1934 Act gave the FCC exclusive jurisdiction over interstate telephone matters.

MRS contends that this case presents circumstances which justify state action overriding the Commerce Clause. MRS does not dispute the PUCO's proposition that the FCC has broad jurisdiction over matters concerning interstate telecommunications service. MRS argues, however, that the PUCO may still exercise its own powers of supervision and regulation over the essentially local activities of AT&T Communications and Cincinnati Bell in providing that interstate service. Furthermore, MRS submits that such state regulation in this case would not place an "undue burden" upon interstate commerce.

The general rule is that the regulation of interstate commerce is left to the federal government by the United States Constitution. However, states may regulate areas of interstate commerce which are local in nature as long as such regulation does not impose a burden on the flow of such commerce. Thus, the states do have authority over the essentially local concerns of utilities engaged in interstate commerce. See *Panhandle Eastern Pipe Line Co.* v. *Pub. Util. Comm.* (1978), 56 Ohio St.

2d 334, 10 O.O. 3d 452, 383 N.E. 2d 1163; and *Panhandle Eastern Pipe Line Co.* v. *Michigan Public Service Comm.* (1951), 341 U.S. 329.

Any local interests which would be served by PUCO regulation of the services provided by AT&T Communications and Cincinnati Bell must be balanced against the burden placed on interstate commerce by virtue of such regulation. Regulation by the PUCO would be an impermissible burden if it would seriously interfere with or substantially impede the free flow of commerce between the states. *Panhandle Eastern, supra* (1978), at 339, 10 O.O. 3d at 454, 383 N.E. 2d at 1166.

MRS submits that a compelling local interest does exist because AT&T Communications' and Cincinnati Bell's refusal to provide interstate FX lines had a clear and significant local impact. MRS provides a variety of marketing research services to its customers, primarily involving market surveys by long distance telephone canvassing. MRS employs some one hundred full-time and one hundred fifty part-time employees at its principal place of business in Cincinnati, Ohio. Its clients include a number of large companies with headquarters or major facilities in the Cincinnati metropolitan area. MRS argues that the extent to which AT&T Communications' and Cincinnati Bell's provision of interstate FX lines affects citizens of Ohio is sufficient to bring the matters involved in the complaint within the PUCO's jurisdiction. Furthermore, MRS submits that the relief sought from the PUCO would not be an impermissible burden on interstate commerce.

Under the Supremacy Clause of the United States Constitution, state legislation and regulating authority may be pre-empted in several circumstances: (1) where Congress, in enacting a federal statute, has expressed a clear intent to pre-empt state law; (2) when it is clear, despite the absence of explicit pre-emptive language, that Congress has intended, by legislating comprehensively, to occupy an entire field of regulation and has left no room for the states to supplement the federal law; and (3) when compliance with both state and federal law is impossible or when compliance with state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of the federal policies embodied in the laws at issue. *Capital Cities Cable, Inc.* v. *Crisp* (1984), 467 U.S. 691, 699; *Cleveland* v. *Pub. Util. Comm.* (1980), 64 Ohio St. 2d 209, 18 O.O. 3d 418, 414 N.E. 2d 718. This case clearly involves a situation where the Congress has pre-empted state authority.

The 1934 Act established a comprehensive legislative scheme regulating common carriers involved in interstate telecommunications. For example, the 1934 Act pre-empts the regulation of interstate commerce by giving the FCC comprehensive and pervasive powers over the regulation of interstate communications, and over the activities of common carriers engaged in the furnishing of such communications. Sections 151-222, 401-416, 501-510 and 601-609, Title 47, U.S. Code. The 1934 Act also requires carriers to provide adequate service, prohibits unjust, unreasonable and discriminatory practices by carriers, and requires carriers to maintain service tariffs or file with the FCC. Sections 201, 202 and 203(a), Title 47, U.S. Code.

Finally, the 1934 Act also establishes a procedure whereby complaints arising under it may be brought before the FCC and adjudicated. In the alternative, an action may be brought in federal district court to compel car-

riers to determine just and reasonable tariffs, to enjoin violations of tariff provisions and to award damages to persons injured by a carrier's violation of specific provisions of the 1934 Act. Sections 205-209, Title 47, U.S. Code.

The establishment of this comprehensive regulatory scheme arguably represents an explicit congressional intent to occupy the field of interstate telecommunications regulation. In any event, however, we find that the clear intent of the 1934 Act is to occupy the entire field of interstate regulation over interstate telecommunications and to leave nothing to state regulation.

Furthermore, we believe that the assumption of jurisdiction by the PUCO would create the possibility for substantial disruption or interference with the purpose of assuring uniform and equal telecommunications service throughout the United States. Where uniformity is essential for the functioning of commerce, a state may not interpose its local regulation. *Morgan* v. *Virginia* (1946), 328 U.S. 373.

The cases cited by MRS do not support its proposition that the FCC has only limited authority to pre-empt state regulatory authority.

*Kellerman* v. *MCI Telecommunications Corp.* (1985), 134 Ill. App. 3d 71, 89 Ill. Dec. 15, 479 N.E. 2d 1057, affirmed (1986), 112 Ill. 2d 428, 98 Ill. Dec. 24, 493 N.E. 2d 1045, certiorari denied (1986), 93 L. Ed. 2d 384, affirmed a lower court refusal to dismiss on jurisdiction pre-emption grounds and allowed the continuation of a state action which alleged violations of state advertising and consumer protection laws. The court found that the state action could neither result in differing service requirements from state to state, nor result in each state regulating the manner in which communications service was rendered to the public. Here, MRS's complaint, unlike that in *Kellerman,* raises issues as to AT&T Communications' duties and liabilities with respect to the rendition of interstate FX and WATS services. Were the PUCO to engage in a review of AT&T Communications' duties and obligations with regard to interstate services, the potential does exist for regulation which could subject AT&T Communications to different and conflicting service requirements in Ohio and other states.

*Alascom, Inc.* v. *F.C.C.* (C.A.D.C. 1984), 727 F. 2d 1212, held that the resolution of FCC pre-emption issues is not a purely legal question, but also involves factual questions as to the scope of the FCC's jurisdiction, and the nature and scope of the state regulation involved. If there are intrastate aspects of the service involved which can be separated from the interstate aspects of the service, then state and federal jurisdiction can also be separated. *Alascom, supra,* at 1219-1220. Here, MRS's complaint does not allege facts which would allow such a separation of intrastate aspects of service sufficient to justify a corresponding split of jurisdiction. The basic allegation made by MRS is that AT&T Communications provided inadequate interstate service and discriminated against MRS in favor of AT&T Communications' other, large customers. These allegations concern matters which are squarely within the FCC's jurisdiction under Section 201, Title 47, U.S. Code (which requires interstate carriers to furnish service upon request), and Section 202, Title 47, U.S. Code (which prohibits unjust or unreasonable discrimination in providing service).

Finally, *New York Tel. Co.* v. *F.C.C.* (C.A. 2, 1980), 631 F. 2d 1059, recognized that Section 152(b), Title 42, U.S. Code left to state regulation

the control of local services, facilities and disputes that in their nature and effect are separable from and do not substantially affect the conduct and development of interstate communications. *Id.* at 1066. This is the same test as applied in *Alascom, supra.* As previously discussed, the matters at issue in MRS's complaint are not severable from the interstate aspects of such service, and regulation by the PUCO could have a substantial adverse impact upon interstate communications.

Thus, we agree with the PUCO's conclusion that the matters raised by MRS's complaint fall squarely within the scope of the FCC's regulation of interstate telecommunications under the 1934 Act. Furthermore, MRS has a clear remedy under the FCC's complaint procedure inasmuch as the FCC has the authority to order the payment of damages in appropriate circumstances. The record indicates that MRS has filed an informal complaint with the FCC in which it raises the same matters alleged in its PUCO complaint.

II

The second ground upon which the PUCO dismissed MRS's complaint was, to the extent MRS's complaint raised issues dealing with a contract between MRS, AT&T Communications and Cincinnati Bell, the PUCO had no jurisdiction to adjudicate such matters. MRS contends that the PUCO can consider the matters raised in its complaint.

The PUCO is not a court of general jurisdiction, and therefore has no power to determine legal rights and liabilities with regard to contract rights or property rights, even though a public utility is involved. *Milligan* v. *Pub. Util. Comm.* (1978), 56 Ohio St. 2d 191, 10 O.O. 3d 352, 383 N.E. 2d 575; *New Bremen* v. *Pub. Util. Comm.* (1921), 103 Ohio St. 23, 132 N.E. 162; *Coss* v. *Pub. Util. Comm.* (1920), 101 Ohio St. 528, 130 N.E. 937. The PUCO's dismissal of MRS's complaint was correct.

Accordingly, the entry of the PUCO is affirmed.

*Entry affirmed.*

MOYER, C.J., SWEENEY, HOLMES, DOUGLAS, WRIGHT and H. BROWN, JJ., concur.

LOCHER, J., concurs in judgment only.