KAZMAIER SUPERMARKET, INC., APPELLEE, *v.*
TOLEDO EDISON COMPANY, APPELLANT.

[Cite as *Kazmaier Supermarket, Inc. v. Toledo Edison Co.* (1991), 61 Ohio St.3d 147.]

(No. 90–1239—Submitted April 10, 1991—Decided July 17, 1991.)

148

150

*Gary F. Kuns*, for appellee.

*Fred J. Lange* and *Douglas J. Hogan*, for appellant.

*Lee I. Fisher*, Attorney General, *James B. Gainer* and *William L. Wright*, urging reversal for *amicus curiae*, Public Utilities Commission of Ohio.

HOLMES, J. Based upon the stance of this matter relative to the contract between the parties for electrical services, it is understandable that some confusion existed as to the exact nature of the plaintiff's claim. It does have the elements and characteristics of a common-law right to be asserted in tort or in contract; however, when the plaintiff's complaint is viewed in the light of public policy considerations and pronouncements by the General Assembly and by this court, we must conclude that the trial court correctly dismissed it.

The General Assembly has created a broad and comprehensive statutory scheme for regulating the business activities of public utilities. R.C. Title 49 sets forth a detailed statutory framework for the regulation of utility service and the fixation of rates charged by public utilities to their customers. As part of that scheme, the legislature created the Public Utilities Commission and empowered it with broad authority to administer and enforce the provisions of Title 49. The commission may fix, amend, alter or suspend rates charged by public utilities to their customers. R.C. 4909.15 and 4909.16. Every public utility in Ohio is required to file, for commission review and approval, tariff schedules that detail rates, charges and classifications for every service offered. R.C. 4905.30. And a utility must charge rates that are in accordance with tariffs approved by, and on file with, the commission. R.C. 4905.22.

The General Assembly has by statute pronounced the public policy of the state that the broad and complete control of public utilities shall be within the

administrative agency, the Public Utilities Commission. This court has recognized this legislative mandate.

"There is perhaps no field of business subject to greater statutory and governmental control than that of the public utility. This is particularly true of the rates of a public utility. Such rates are set and regulated by a general statutory plan in which the Public Utilities Commission is vested with the authority to determine rates in the first instance, and in which the authority to review such rates is vested exclusively in the Supreme Court by Section 4903.12, Revised Code * * *." *Keco Industries, Inc. v. Cincinnati & Suburban Bell Tel. Co.* (1957), 166 Ohio St. 254, 256, 2 O.O.2d 85, 86, 141 N.E.2d 465, 467; see, also, *Inland Steel Dev. Corp. v. Pub. Util. Comm.* (1977), 49 Ohio St.2d 284, 288–289, 3 O.O.3d 435, 437–438, 361 N.E.2d 240, 243–244; *Akron v. Pub. Util. Comm.* (1948), 149 Ohio St. 347, 359, 37 O.O. 39, 44, 78 N.E.2d 890, 897.

The General Assembly has provided a rather specific procedure by which customers may challenge rates or charges of a public utility that are "in any respect" unjust, unreasonable, or unlawful, and has designated the commission as the appropriate forum before which such claims are to be heard. R.C. 4905.26, in this regard, provides as follows:

"Upon complaint in writing against any public utility by any person, firm, or corporation, or upon the initiative or complaint of the public utilities commission, that any rate, fare, charge, toll, rental, schedule, classification, or service, or any joint rate, fare, charge, toll, rental, schedule, classification, or service rendered, charged, demanded, exacted, or proposed to be rendered, charged, demanded, or exacted, *is in any respect unjust, unreasonable, unjustly discriminatory, unjustly preferential, or in violation of law*, or that any regulation, measurement, or practice affecting or relating to any service furnished by said public utility, or in connection with such service, is, or will be, in any respect unreasonable, unjust, insufficient, unjustly discriminatory, or unjustly preferential, or that any service is, or will be, inadequate or cannot be obtained, and, upon complaint of a public utility as to any matter affecting its own product or service, if it appears that reasonable grounds for complaint are stated, the commission shall fix a time for hearing and shall notify complainants and the public utility thereof, and shall publish notice thereof in a newspaper of general circulation in each county in which complaint has arisen. * * *" (Emphasis added.)

Accordingly, it is readily apparent that the General Assembly has provided for commission oversight of filed tariffs, including the right to adjudicate complaints involving customer rates and services. This court has previously had occasion to discuss such authority of the commission. In *State, ex rel.*

*Northern Ohio Tel. Co., v. Winter* (1970), 23 Ohio St.2d 6, 9, 52 O.O.2d 29, 31, 260 N.E.2d 827, 829, it was stated:

" * * * The General Assembly has enacted an entire chapter of the Revised Code dealing with public utilities, requiring, *inter alia*, adequate service, and providing for permissible rates and review procedure. *E.g.*, R.C. 4905.04, 4905.06, 4905.22, 4905.231 and 4905.381. Further, R.C. 4905.26 provides a detailed procedure for filing service complaints. *This comprehensive scheme expresses the intention of the General Assembly that such powers were to be vested solely in the Commission.* As this court said in *State, ex rel. Ohio Bell Telephone Co., v. Court of Common Pleas* (1934), 128 Ohio St. 553 at 557 [1 O.O. 99 at 100–101, 192 N.E. 787 at 788–789]:

" 'The jurisdiction specifically conferred by statute upon the Public Utilities Commission over public utilities of the state, including the regulation of rates and the enforcement of repayment of money collected * * * during the pendency of the proceeding * * * is so complete, comprehensive and adequate as to warrant the conclusion that it is likewise exclusive.' See, also, *Ohio Transport, Inc. v. Pub. Util. Comm.* (1955), 164 Ohio St. 98, 107 [57 O.O. 108, 113, 128 N.E.2d 22, 28]." (Emphasis added.)

The General Assembly has provided a specific remedy for persons, firms or corporations who have sustained damages due to an unlawful act of a public utility, or where such damages arise from the utility's omission to do any act or thing required by law or by the order of the commission. R.C. 4905.61 provides that in such instances the utility is liable for treble damages.[1]

However, this court has held that bringing a suit for treble damages under R.C. 4905.61 is dependent upon a finding by the commission that there was in fact a violation of a specific statute, or noncompliance with a commission order. *Milligan v. Ohio Bell Tel. Co.* (1978), 56 Ohio St.2d 191, 194, 10 O.O.3d 352, 354, 383 N.E.2d 575, 577. This court also found that " '* * * [a]n award of treble damages based upon an independent finding by a Court of Common Pleas of a violation of such statute or order would be void. See *State, ex rel. Columbia Gas, v. Kiroff* (1976), 46 Ohio St.2d 397 [75 O.O.2d 461, 348 N.E.2d

---

1. R.C. 4905.61 provides:

"If any public utility or railroad does, or causes to be done, any act or thing prohibited by Chapters 4901., 4903., 4905., 4907., 4909., 4921., 4923., and 4925. of the Revised Code, or declared to be unlawful, or omits to do any act or thing required by such chapters, or by order of the public utilities commission, such public utility or railroad is liable to the person, firm, or corporation injured thereby in treble the amount of damages sustained in consequence of such violation, failure, or omission. Any recovery under this section does not affect a recovery by the state for any penalty provided for in such chapters."

705]." *Milligan, supra,* 56 Ohio St.2d at 194, 10 O.O.3d at 354, 383 N.E.2d at 577.

In regard to administrative agency exclusivity, generally, this court has recognized that where the General Assembly has enacted a complete and comprehensive statutory scheme governing review by an administrative agency, exclusive jurisdiction is vested within such agency. *State, ex rel. Geauga Cty. Budget Comm., v. Geauga Cty. Court of Appeals* (1982), 1 Ohio St.3d 110, 113, 1 OBR 143, 146, 438 N.E.2d 428, 431; see, also, *State, ex rel. Northern Ohio Tel. Co., v. Winter, supra,* 23 Ohio St.2d at 9–10, 52 O.O.2d at 31, 260 N.E.2d at 829–830; *State, ex rel. Ohio Bell Tel. Co., v. Cuyahoga Cty. Court of Common Pleas* (1934), 128 Ohio St. 553, 1 O.O. 99, 192 N.E. 787.

This appeal involves a dispute over the correct rate to be assessed and the reimbursement of any overcharge along with interest upon the overcharge, if any. Kazmaier's claim alleged that it was charged a rate other than the appropriate commission-approved rate. Whether expressly alleged or not, Kazmaier's claim is that it was subjected to an unjust and unreasonable rate in violation of R.C. 4905.22. Kazmaier's complaint, in essence, asserted, *inter alia,* as follows:

(a) that it was billed under the wrong rate schedule for a specified period of time;

(b) that it was charged an *excessive* rate thereby;

(c) that Toledo Edison failed to properly monitor its rate and billing process; and

(d) that Toledo Edison wrongfully charged a *higher rate* than that authorized under its tariff.

This type of claim is one which by way of complaint may be properly raised before the commission pursuant to R.C. 4905.26. The root of the complaint is that the rate imposed by Toledo Edison was unreasonable and in violation of law. Although the allegations of the complaint seem to sound in tort and contract law, it must not be forgotten that the contract involved is the utility rate schedule. A dollar determination of the amount of the rate overcharge, if any, would require an analysis of the rate structure and various charges that were in effect under each of the tariff schedules during the period. This process of review and determination of any overcharges, and of the duty of the utility, under the circumstances, to disclose any lower rates available to the customer, is best accomplished by the commission with its expert staff technicians familiar with the utility commission provisions.

Having determined that the commission has been granted exclusive jurisdiction to hear and determine matters which are in essence rate and service

oriented, we feel it necessary to point out that such a determination in no manner diminishes the basic jurisdiction of the court of common pleas in other areas of possible claims against public utilities. This court has previously recognized that pure common-law tort claims may be brought against utilities in the common pleas court. Exemplary of this is that a claim against a public utility for invasion of privacy may be brought in the common pleas court. See *Milligan v. Ohio Bell Tel. Co., supra.* In *Kohli v. Pub. Util. Comm.* (1985), 18 Ohio St.3d 12, 18 OBR 10, 479 N.E.2d 840, this court held that the utility's failure to warn landowners of dangers of neutral-to-earth voltage constituted a tort claim for the courts. The commission itself has recognized limitations upon its jurisdiction to consider and determine pure contract claims not involving tariffs. In *Marketing Research Services, Inc. v. Pub. Util. Comm.* (1987), 34 Ohio St.3d 52, 517 N.E.2d 540, this court affirmed the commission's refusal to exercise jurisdiction over an alleged breach of contract for the provision of interstate telecommunication services by American Telephone and Telegraph Company.

We conclude that in this type of matter involving a dispute inherently arising from charges based upon tariffs filed with and approved by the commission, the General Assembly has granted the commission exclusive jurisdiction to determine the mutual rights and responsibilities of the parties. Therefore, we reverse the judgment of the court of appeals and reinstate the order of the trial court which dismissed the action.

*Judgment accordingly.*

MOYER, C.J., SWEENEY, DOUGLAS, WRIGHT and CACIOPPO, JJ., concur.

H. BROWN, J., dissents in part.

MARY CACIOPPO, J., of the Ninth Appellate District, sitting for RESNICK, J.

HERBERT R. BROWN, J., dissenting in part. The majority correctly states the applicable law, which assigns exclusive jurisdiction over rate disputes to the Public Utilities Commission. I disagree, however, with the majority's application of this law to the instant case.

Contrary to the majority's assertions, the instant case does *not* involve a rate complaint under R.C. 4905.26. Toledo Edison has conceded that the wrong rate was charged, and has refunded the overcharge. The only issue presented by the instant case is whether Kazmaier is entitled to interest on the overcharge. This is hardly the sort of arcane regulatory issue which requires the services of "the commission with its expert staff technicians" to resolve.

I would affirm the judgment of the court of appeals.