**WESTSIDE CELLULAR, INC., d.b.a. Cellnet, Appellant,**

v.

**NORTHERN OHIO CELLULAR TELEPHONE COMPANY,**
**d.b.a. Cellular One, Appellee, et al.**

[Cite as *Westside Cellular, Inc. v. N. Ohio Cellular*
*Tel. Co.* (1995), 100 Ohio App.3d 768.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 66824.

Decided Feb. 2, 1995.

*Mark E. Staib, Randy J. Hart* and *Janine L. Migden,* for appellant.

*Bricker & Eckler, Randolph C. Wiseman, Mary W. Christensen* and *Anne Marie Sferra,* for appellee.

---

PATTON, Chief Judge.

Plaintiff Westside Cellular, Inc., d.b.a. Cellnet, filed a complaint seeking a temporary restraining order and preliminary and permanent injunctive relief against defendant Northern Ohio Cellular Telephone Company, d.b.a. Cellular One, and other named defendants. The complaint set forth two causes of action under R.C. Chapter 4905, alleging unlawful discrimination and unfair competition by Cellular One. The complaint stemmed from Cellular One's decision to terminate a telephone equipment rental program it had offered to Cellnet. Cellular One filed a motion to dismiss the complaint, arguing that the Public Utilities Commission of Ohio ("commission") had exclusive subject matter jurisdiction over Cellnet's claims. Cellnet then filed an amended complaint alleging a third cause of action for common-law tort claims of unfair competition and unfair business practices. Those claims were identical to the claims brought under R.C. Chapter 4905. The trial court asked the parties to brief the issue of subject matter jurisdiction. After settlement negotiations failed, the court dismissed the action. Cellnet appeals and assigns one error challenging the dismissal.

This appeal requires us to review the statutory and regulatory framework relating to cellular networks in this state and decide whether the court of common pleas has jurisdiction to hear claims premised on alleged violations of R.C. Chapter 4509.

In 1981, the Federal Communications Commission ("FCC") established the regulatory framework for cellular telephone service in this country. The FCC licensed two cellular telephone carriers per standard metropolitan statistical area. In the Cleveland area, Cellular One received a license to operate as a non-wire, or independent operator. In this capacity, Cellular One sells airtime through two different means. First, Cellular One sells airtime through its own retail outlets or affiliated dealers and agents. These dealers contract with Cellular One to solicit customers who sign service agreements to use Cellular One. These agents are compensated through commissions or royalties, and have no further contractual obligation to the end users of Cellular One's airtime.

The second means of selling airtime came about in response to FCC concerns about spurring competition in order to provide better service to end users. The FCC ordered carriers like Cellular One to sell airtime on a wholesale basis to customers like Cellnet. Cellnet purchases the airtime in blocks from Cellular One and packages it along with accessories or other services for sale to customers. Cellular One has no contractual relationship with Cellnet's customers, nor does it have any control over how Cellnet packages airtime.

In 1991, Cellular One began to offer its retail and wholesale customers the opportunity to rent cellular telephone equipment on an interest-free basis, provided the end user purchased a minimum amount of airtime owned by Cellular One. Cellular One offered the rentals below its costs in order to spur consumer purchases of airtime it marketed for sale. Profits from increased activation offset losses from the rentals. For its part, Cellnet was free to utilize the rental telephones in any way it saw fit, subject only to its monthly rental fee to Cellular One.

In August 1993, Cellular One informed Cellnet that it would discontinue the rental program for all prospective Cellnet customers. Cellnet then filed this action for injunctive relief. It alleged Cellular One's termination of the telephone rental program would cause it to suffer irreparable harm since Cellular One continued to offer the rentals to its retail customers. Cellnet maintained it could not overcome the price advantage other retailers would hold over it. It therefore alleged this advantage constituted (1) an unreasonable preference or advantage in violation of R.C. 4905.35; (2) a means of destroying competition in violation of R.C. 4905.33; and (3) a breach of its statutory duty to furnish necessary and adequate service and facilities in violation of R.C. 4905.22.

When considering a Civ.R. 12(B)(1) motion to dismiss a complaint for lack of subject matter jurisdiction, the trial court must decide whether the plaintiff has alleged any cause of action which the court has the authority to decide. The court is not confined to the allegations of the complaint, and may consider material pertinent to the inquiry without converting the motion into one for

summary judgment. *Southgate Dev. Corp. v. Columbia Gas Transmission Corp.* (1976), 48 Ohio St.2d 211, 2 O.O.3d 313, 358 N.E.2d 526, paragraph one of the syllabus; *Bowen v. Britton* (1993), 84 Ohio App.3d 473, 477, 616 N.E.2d 1217, 1220.

■ It is the public policy of this state that the broad and complete control of public utilities shall lie with the commission. *Kazmaier Supermarket, Inc. v. Toledo Edison Co.* (1991), 61 Ohio St.3d 147, 150–151, 573 N.E.2d 655, 658. By enacting statutory provisions requiring a public utility to file and adhere to rate schedules, forbidding discrimination among its customers, prohibiting free service, and providing a detailed procedure for service and rate complaints, the General Assembly has lodged exclusive jurisdiction in such matters with the commission, subject to review by the Supreme Court. *State ex rel. N. Ohio Tel. Co. v. Winter* (1970), 23 Ohio St.2d 6, 52 O.O.2d 29, 260 N.E.2d 827, paragraph one of the syllabus. In *Milligan v. Ohio Bell Tel. Co* (1978), 56 Ohio St.2d 191, 10 O.O.3d 352, 383 N.E.2d 575, the court outlined the general principle that alleged violations of R.C. Chapter 4905 are the concern of the commission in the first instance:

"A Court of Common Pleas is without jurisdiction to hear a claim seeking treble damages pursuant to R.C. 4905.61 absent a prior determination by the Public Utilities Commission that there was in fact a violation of R.C. Chapters 4901, 4903, 4905, 4907, 4909, 4921 or 4925, or an order of the commission." *Id.,* paragraph one of the syllabus; see, also, *State ex rel. Dayton Power & Light Co. v. Kistler* (1979), 57 Ohio St.2d 21, 11 O.O.3d 108, 385 N.E.2d 1076.

Clearly, Cellnet's causes of action, premised on alleged violations of R.C. 4905.22, 4905.33 and 4905.35, are within the purview of the commission's sole authority to hear matters concerning statutory violations by public utilities.

■ In addition, we find the purported common-law claims of unlawful discrimination and unfair trade practices to be claims that derive their essence from R.C. Chapter 4905, and therefore should be determined by the commission. Cellnet filed these claims in response to Cellular One's initial motion to dismiss. Cellnet's amended complaint states these common-law claims "are in violation of the common and statutory laws of the State of Ohio." As pertinent here, R.C. 4905.33 prohibits a public utility from charging any corporation a greater or lesser compensation than it receives from any other corporation. This claim is identical to the common-law discrimination claim. R.C. 4905.35 prohibits a public utility from giving any undue or unreasonable preference or disadvantage to any corporation. The common-law claim of unfair business practices echoes this statutory language.

In *Milligan, supra,* the plaintiff contended that a telephone company had charged him an unjust and unreasonable rate, had wrongfully terminated his service in violation of R.C. 4905.22, and that as result, the telephone company had injured his good name and reputation. The plaintiff further contended the telephone company had intentionally invaded his privacy. The court held that the first three causes of action were within the commission's exclusive jurisdiction. The court did find that the claim for invasion of privacy could be brought in the court of common pleas since it asserted a common-law cause of action which the commission had no authority to hear. 56 Ohio St.2d at 195, 10 O.O.3d at 354, 383 N.E.2d at 578.

In *Mandrych v. GTE North, Inc.* (July 13, 1994), Medina App. No. 2287–M, unreported, 1994 WL 362124, the court of appeals found that the trial court lacked subject matter jurisdiction to hear a breach of contract claim concerning a dispute over payment for telephone services. The court, citing *Milligan, supra,* found that the complaint concerned a question regarding rates paid by the customer. The court concluded that the question was one falling within the exclusive jurisdiction of the commission. Hence, although the claim had been brought as a common-law breach of contract claim, the court found that its true import concerned R.C. 4905.33. See, also, *Carter Resources, Inc. v. E. Ohio Gas Co.* (Dec. 29, 1988), Tuscarawas App. No. 88AP080055, unreported, 1988 WL 142307; cf. *Lake Cty. Employer's Health & Welfare Benefit Plan & Trust v. Fid. Sec. Life Ins. Co.* (1993), 90 Ohio App.3d 809, 630 N.E.2d 781 (common-law claims of breach of contract and bad faith under a welfare benefit plan fell within ERISA preemption and deprived the court of common pleas of jurisdiction since resolution of the claims would require the trial court to construe the provisions of the welfare benefit plan).

Cellnet argues that a decision finding the court of common pleas lacks subject matter jurisdiction may effectively foreclose any meaningful avenue of relief it might have. Both parties agree that the FCC has denied state regulatory agencies jurisdiction to hear matters concerning the rental equipment at issue in this case. Cellnet maintains it will have no remedy unless we find it can bring its claims in a state court action.

In 1987, the FCC defined cellular telephones as "consumer premises equipment" and prohibited state regulatory agencies from exercising any control over that equipment. Thus, although the commission has sole jurisdiction under state law to hear the complaint, it lacks jurisdiction to do so under a federal mandate.

Cellnet argues that this void in the commission's jurisdiction should revert jurisdiction to the court of common pleas. We believe application of this argument could create exceptions that would gut the jurisdictional scheme promulgated by the General Assembly. In any event, we find the FCC's

preemption has no substantive bearing on the commission's exclusive jurisdiction under the law of this state.

It remains unclear from the record just what claims Cellnet could pursue before the FCC. Cellnet argues the FCC could not hear its common-law claims for relief. However, as we stated earlier, those common-law claims are essentially derived from R.C. Chapter 4905, and therefore within the exclusive jurisdiction of the commission. Any discussion concerning the FCC's authority would be beyond the scope of our review in this appeal.

Accordingly, we conclude the trial court properly dismissed Cellnet's complaint for want of subject matter jurisdiction. The assignment of error is overruled.

The judgment is affirmed.

*Judgment affirmed.*

SPELLACY and O'DONNELL, JJ., concur.