HULL, Appellant,

v.

COLUMBIA GAS OF OHIO, Appellee, et al.

[Cite as *Hull v. Columbia Gas of Ohio*, 160 Ohio App.3d 695, 2005-Ohio-2089.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

No. L-04-1149.

Decided April 29, 2005.

696

Joseph F. Albrechta and John A. Coble, for appellant.

Cary Rodman Cooper and David Rodman Cooper, for appellee.

SINGER, Presiding Judge.

{¶ 1} This is an appeal from a judgment of the Lucas County Court of Common Pleas dismissing a defendant in a class-action lawsuit. Because we conclude that the trial court had authority to hear appellant's contract claims, we reverse and remand for further proceedings.

{¶ 2} Appellee is Columbia Gas of Ohio, a supplier and deliverer of natural gas to consumers. Appellant is Charles A. Hull, a residential natural gas customer along with those similarly situated.

{¶ 3} In 2000, appellant elected to participate in appellee's Ohio Consumer Choice program. Part of utility deregulation, the choice program was set up to allow consumers to purchase natural gas in a competitive environment. Appellant was offered natural gas from gas marketers selected and approved by appellee.

{¶ 4} Appellant chose to purchase his gas from Energy Max of Northeast Ohio, Inc., a Youngstown company that contracted to provide natural gas for $0.36 per 100 cubic feet for a one-year period, beginning March 15, 2000.

{¶ 5} On August 30, 2000, appellee notified appellant that Energy Max had failed to deliver the natural gas that it had contracted to deliver to appellee for appellant's purchase. As a result, appellee told appellant, it had elected to terminate Energy Max from its Consumer Choice program. The result, appellee notified appellant, was that appellee would assume the role as appellant's natural gas supplier, but at appellee's current approved rate of nearly $0.63 per 100 cubic feet.

{¶ 6} When appellant complained to the Public Utilities Commission of Ohio ("PUCO"), the PUCO responded that it did "not have clear jurisdiction over marketers" and that the switch was engendered by a contract dispute between appellee and Energy Max.

{¶ 7} On October 18, 2000, appellant sued appellee and Energy Max on behalf of himself and others similarly situated, alleging breach of contract and warranty as well as a violation of the public utilities law, R.C. Title 49.[1] A class was eventually certified,[2] and a default judgment against Energy Max obtained. Before this occurred, however, the court dismissed appellee for want of jurisdiction. The court concluded that appellant's claims against appellee constituted a

---

1. Appellant eventually dismissed this count as being exclusively within the jurisdiction of the PUCO.

2. For purposes of this decision, however, we will refer to the lead plaintiff in the class in the singular.

rate dispute with a public utility and, therefore, were within the exclusive jurisdiction of the PUCO.

{¶ 8} Appellant now appeals this dismissal, setting forth a single assignment of error:

{¶ 9} "The trial court erred by granting the motion to dismiss filed by appellee Columbia Gas of Ohio"

{¶ 10} The trial court granted appellee's motion to dismiss for want of subject-matter jurisdiction, pursuant to Civ.R. 12(B)(1).

{¶ 11} We review a dismissal for lack of subject-matter jurisdiction de novo. *Pulizzi v. Sandusky*, 6th Dist.App. No. E–03–002, 2003-Ohio-5853, 2003 WL 22462463, at ¶ 5. At issue is whether a plaintiff has alleged a cause of action that the court has authority to decide. Id., citing *McHenry v. Indus. Comm.* (1990), 68 Ohio App.3d 56, 62, 587 N.E.2d 414. The court's analysis is not limited to the complaint but may also consider other pertinent material without converting the motion to one for summary judgment. *Southgate Dev. Corp. v. Columbia Gas Transm. Corp.* (1976), 48 Ohio St.2d 211, 2 O.O.3d 393, 358 N.E.2d 526, paragraph one of the syllabus.

{¶ 12} In this matter, the trial court concluded that the subject of appellant's complaint was a rate dispute. Therefore, the court concluded, the PUCO has exclusive jurisdiction. On appeal, appellant insists that there was no rate dispute; the rate charged by appellee was unquestionably within its tariff. Rather, appellant contends, appellee was an agent of or at least appeared to be an agent of Energy Max in entering into a contract with appellant. It is the breach of this contract that appellant maintains is the crux of his suit. Therefore, according to appellant, the suit falls within the jurisdiction of the courts, not the PUCO.

{¶ 13} "The jurisdiction specifically conferred by statute upon the Public Utilities Commission over public utilities of the state, including the regulation of rates and the enforcement of repayment of money * * *, is so complete, comprehensive and adequate as to warrant the conclusion that it is likewise exclusive." *State ex rel. Ohio Bell Tel. Co. v. Court* (1934), 128 Ohio St. 553, 557, 1 O.O. 99, 192 N.E. 787; accord, *N. Ohio Tel. Co. v. Winter* (1970), 23 Ohio St.2d 6, 9, 52 O.O.2d 29, 260 N.E.2d 827; *Kazmaier v. Toledo Edison Co.* (1991), 61 Ohio St.3d 147, 152, 573 N.E.2d 655.

{¶ 14} The traditionally recognized exceptions to this blanket preemption of jurisdiction, however, are "pure tort and contract claims that do not require a consideration of statutes and regulations administered and enforced by the [Public Utilities] Commission." *State ex rel. Illuminating Co. v. Cuyahoga Cty.*

*Court of Common Pleas,* 97 Ohio St.3d 69, 73, 2002-Ohio-5312, 776 N.E.2d 92, at ¶ 21; see, e.g., *Kazmaier,* supra, 61 Ohio St.3d at 153–154, 573 N.E.2d 655 (pure common-law tort claims may be brought in common pleas court); *Marketing Research Serv. v. Pub. Util. Comm.* (1987), 34 Ohio St.3d 52, 56, 517 N.E.2d 540 (breach of contract for the provision of interstate telecommunications services); *Kohli v. Pub. Util. Comm.* (1985), 18 Ohio St.3d 12, 14, 18 OBR 10, 479 N.E.2d 840 (failure to warn landowners concerning the dangers of voltage); *Milligan v. Ohio Bell Tel. Co.* (1978), 56 Ohio St.2d 191, 10 O.O.3d 352, 383 N.E.2d 575, paragraph three of syllabus (invasion of privacy).

{¶ 15} If the hallmark of claims exempt from the PUCO's broad authority is that they do not require consideration of statutes or regulations administered or enforced by the commission, it is difficult to see how the present matter is not within the exemption. As much as appellee reiterates that this case is about rates, there is no rate dispute requiring the commission to interpret statutes or regulations. Appellant concedes that the default rate appellee charged after terminating its arrangement with Energy Max was the proper rate, according to the regulatory tariffs.

{¶ 16} The real question is whether appellee was a party, by agency, apparent agency or otherwise, to appellant's contract with Energy Max. Appellant insists it was and offers in support the fact that it was appellee (without any involvement of the PUCO) who vetted, chose, and promoted Energy Max. Moreover, the contract itself and other documents relating to the transaction are captioned in bold letters "Columbia Gas of Ohio Customer Choice Program" and "Columbia Gas of Ohio Customer Choice Enrollment & Gas Purchase Agreement." We fail to see how the interpretation of this evidence requires the expert rate analysis of the commission.

{¶ 17} Appellee might have a better argument should it suggest that the Consumer Choice program itself is a creation of statute and regulation, but this area too is problematic for appellee.

{¶ 18} The legislation that created what appellee would call its Customer Choice program was enacted in 1996 in Am.Sub.H.B. No. 476, 146 Ohio Laws, Part III, 5244. The bill set forth a deregulatory scheme wherein unregulated natural gas marketers could compete in an open market for the consumer's business. The theory was that unregulated suppliers, competing with each other, would drive down the price through market-driven efficiencies and economies. R.C. 4929.02(A). To create this unregulated environment, the legislature expressly directed that these marketers be outside the jurisdiction and exempt from the authority of the PUCO. R.C. 4929.02(A)(9) and 4929.03; see, also, title of Am.Sub.H.B. No. 476. The scheme also permits a natural gas utility such as

appellee to apply to compete with its own nonjurisdictional, exempt service. R.C. 4929.03; R.C. 4929.04.

{¶ 19} Statutory PUCO jurisdiction for complaints relating to retail natural gas marketers was not enacted until 2001, in Am.Sub.H.B. No. 9 (eff. June 26, 2001). R.C. 4929.24. Consequently, for the time relevant to this appeal, the activities of retail natural gas suppliers engaged in the Customer Choice program were statutorily exempt from the commission's regulation. This was recognized by the commission in its decision submitted as supplemental authority by appellee: "[W]e believe our prior finding of jurisdiction in contractual disputes between natural gas marketers and their end-use customers was in error. Because there was no statute in effect prior to June 26, 2001, which gave this Commission authority over natural gas marketers to adjudicate their historical actions vis-a-vis their end-use customers, the Commission has no such authority prior to that date. * * * Any remaining issues involving rights and responsibilities of customers under their contracts with natural gas marketers prior to June 26, 2001, as well as any claims for monetary or other relief are properly pursued in a court of law." *In re Witty v. Energy Max of Northeast Ohio, Inc.* (Feb. 14, 2002), PUCO No. 00–2074–GA–CSS at ¶ 3 and footnote 2.

{¶ 20} Appellant alleges that appellee was a party, or an agent, or an apparent agent to a contract expressly outside the purview of the PUCO. Whether this is true is a question ordinarily reserved for a trier of fact. *McSweeney v. Jackson* (1996), 117 Ohio App.3d 623, 631, 691 N.E.2d 303. If appellee was an agent of Energy Max, then the transaction is statutorily exempt from PUCO oversight, even if the issue is a rate. Consequently, the trial court had authority to hear appellant's complaint and therefore erred in granting appellee's Civ.R. 12(B)(1) motion. Accordingly, appellant's sole assignment of error is well taken.

{¶ 21} On consideration whereof, the judgment of the Lucas County Court of Common Pleas is reversed. This matter is remanded to that court for further proceedings consistent with this decision. Costs to appellee pursuant to App.R. 24.

Judgment reversed.

MARK L. PIETRYKOWSKI, J., concurs.

GEORGE M. GLASSER, J., dissents.

GEORGE M. GLASSER, J., retired, sitting by assignment of the Chief Justice of the Supreme Court of Ohio.

GLASSER, Judge, dissenting.

{¶ 22} I respectfully disagree from the majority's determination that the trial court had jurisdiction to hear appellant's alleged contract claims and from its reversal of the judgment of the trial court granting the motion to dismiss of Columbia Gas.

{¶ 23} This dispute arises from the Columbia Gas Customer Choice Program, which was implemented after the PUCO approved modifications to Columbia's tariff in 1997. Under this program, appellant had the opportunity to select any listed marketer. The purpose of this plan was to enable customers to realize potential savings by purchasing gas for less than Columbia's price.

{¶ 24} Appellant accepted an offer from Energy Max to provide natural gas for one year at the fixed rate of $0.36 per 100 cubic feet. Appellant accepted this offer and entered into a contract with Energy Max for a period of one year beginning March 15, 2000. Appellant experienced savings under this agreement until August 30, 2000, when Columbia notified appellant that Energy Max had failed to deliver the natural gas it had contracted to deliver for appellant's use. Columbia terminated Energy Max from the Choice Program, and Columbia assumed the role of appellant's natural gas supplier at its current rate of $0.62593 per 100 cubic feet. Columbia also informed appellant that he was free to contract with any other marketer participating in the Choice Program.

{¶ 25} On October 18, 2000, appellant filed a class-action complaint for breach of contract and breach of implied warranty, including a claim for statutory treble damages and a claim for damages arising out of an agency relationship between Energy Max and Columbia and requesting injunctive relief. Columbia filed a motion to dismiss the complaint based on lack of jurisdiction over the subject matter. Appellant dismissed Count 3 of the complaint, his claim for treble damages under R.C. 4905.61, acknowledging that that claim was under the exclusive jurisdiction of the PUCO. Appellant argues that the remaining claims constitute contract claims.

{¶ 26} Ohio courts have recognized the legislative mandate that control of public utilities be within the administrative agency, the PUCO. This is particularly applicable to customer challenges of rates and charges. In *Kazmaier Supermarket, Inc. v. Toledo Edison Co.* (1991), 61 Ohio St.3d 147, 573 N.E.2d 655, the court also recognized that plaintiff's claim had elements and characteristics of a common-law right to be asserted in tort or contract. However, the court concluded that whether expressly alleged or not, the plaintiff's claim was that it was subjected to an unjust and unreasonable rate in violation of R.C. 4905.22, and the court concluded that the rate dispute came under the exclusive jurisdiction of the PUCO. Subsequent cases have concluded that although a plaintiff may cast the utility's behavior as sounding under tort theories of liability, if the underlying dispute remained service-related it fell within the PUCO's exclusive jurisdiction.

{¶ 27} In this case appellant's dispute with Columbia is essentially that the rate charged after Columbia terminated Energy Max from the Choice Program was unlawful. Labeling these claims as anything other than a rate dispute does not change their character.

{¶ 28} Additionally, Section VI(E) of Columbia's tariff, which is on file with, and approved by, the PUCO, provides for Columbia's termination of Energy Max from the Choice Program and reinstitution of Columbia's service to appellant. This provision states:

{¶ 29} "If a Marketer fails to deliver gas in accordance with the requirements of the Columbia Customer Choice Program, or otherwise fails to comply with Paragraph 67(E) of the tariff, Columbia shall have the discretion to suspend temporarily or terminate such Marketer's participation in the Columbia Customer CHOICE Program. If the Marketer is suspended or expelled from Columbia's Customer CHOICE Program, customers in the Marketer's Customer Group shall revert to Columbia sales service, unless and until said customer joins another Marketer Customer Group."

{¶ 30} It is clear that this section of the tariff contemplates situations similar to that which is before the court and does not make Columbia the guarantor of the rate contracted for by the marketer and indicates clearly that appellant had the option to seek another lower-priced supplier of natural gas. The only breach-of-contract claim present in this case involves Energy Max.

{¶ 31} Therefore, the trial court properly determined that it did not have jurisdiction in regard to appellant's dispute with Columbia, and I would affirm the judgment of the trial court.