[Cite as *State ex rel. Ohio Edison Co. v. Trumbull Cty. Court of Common Pleas*, 2019-Ohio-5313.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# TRUMBULL COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO ex rel. OHIO EDISON COMPANY, | : | **PER CURIAM OPINION** |
| | : | |
| Relator, | : | |
| | : | **CASE NO. 2019-T-0062** |
| - vs - | : | |
| TRUMBULL COUNTY COURT OF COMMON PLEAS, et al., | : | |
| Respondent. | : | |

Original Action for Writ of Prohibition.

Judgment: Petition granted.

*John T. Dellick,* Harrington, Hoppe & Mitchell, Ltd., 26 Market Street, Suite 1200, P.O. Box 6077, Youngstown, OH 44501 (For Relator).

*Dennis Watkins,* Trumbull County Prosecutor, and *William J. Danso* and *Michael J. Fredericka*, Assistant Prosecutors, Administration Building, Fourth Floor, 160 High Street, N.W., Warren, OH 44481 (For Respondent).

PER CURIAM.

{¶1} Relator, Ohio Edison Company ("Ohio Edison"), has filed an original action seeking a writ of prohibition to prevent respondent, Trumbull County Court of Common Pleas, from proceeding on a complaint, filed against it by a third party, Double K Kirby Farms ("Double K") in Case No. 2019 CV 416. In its petition, Ohio Edison argues the court of common pleas lacks jurisdiction over a complaint filed against it because it

claims the Public Utility Commission of Ohio ("PUCO") possesses exclusive jurisdiction over the allegations, pursuant to R.C. 4905.26. Relator filed a motion to dismiss the complaint, asserting its jurisdictional argument. Respondent, Trumbull County Court of Common Pleas, however, after considering the motion and the plaintiff's memorandum in opposition, denied the motion. For the reasons that follow, we conclude the Trumbull County Court of Common Pleas lacks jurisdiction to proceed and accordingly grant Ohio Edison's petition.

{¶2} **Factual and Procedural Background**

{¶3} In March 2019, Double K filed its complaint in the court of common pleas. The following allegations were set forth in the complaint: In April 2017, Double K observed abnormal behavior in its dairy cows. In October 2017, Double K believed stray electrical voltage existed on its farm in the form of neutral-to-earth voltages. Double K contacted Precision Ag Automation, an apparent agricultural engineering company, to test for stray voltage (the complaint and the parties appear to agree that "neutral-to-earth voltage" and "stray voltage" identify the same electrical phenomenon). Pursuant to the test, Precision Ag found excessive voltage on the farm and equipment damage from low voltage during a "brownout." Double K subsequently contacted New Pittsburg Large Animal Clinic to evaluate its cows. The clinic opined the stray electrical voltage caused substantial damage to its cows. Over 25 cows died from the stray electrical voltage and another 32 had to be sold for slaughter due to complications from the voltage. In light of the foregoing, Double K asserted Ohio Edison breached its duty by failing to provide proper and appropriate electrical voltage and failing to install an

2

appropriate device to reduce the neutral-to-earth voltages which caused it damages in excess of $25,000.

{¶4} Ohio Edison moved to dismiss the complaint, arguing Double K's claim was actually a service complaint subject to the exclusive jurisdiction of PUCO. Double K opposed the motion. In its memorandum, Double K noted it had previously filed a claim with PUCO, but, in that matter, Ohio Edison moved to dismiss its prayer for monetary damages. PUCO granted the motion. Double K asserted that, because the prayer for damages was dismissed, the action in tort was properly before the court of common pleas. Ohio Edison filed a reply brief, asserting Ohio's public-utility statutes provide a customer with the ability to have its service claim assessed for a violation, but the process is two-fold. If the service complaint before PUCO is successful and not reversed by the Ohio Supreme Court, a claimant may then bring the matter before the courts to determine whether damages are appropriate. See R.C. 4905.61. The trial court denied Ohio Edison's motion, concluding the claim for damages was properly before it.

{¶5} Ohio Edison subsequently filed the instant petition for writ of prohibition. The matter is before the court on the petition, Ohio Edison's motion for summary judgment, as well as respondent's memorandum in opposition to Ohio Edison's motion.

{¶6} **General Governing Law**

{¶7} Three elements are generally required for a writ of prohibition to issue: the exercise of judicial power, the lack of authority for the exercise of that power, and the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Elder v. Camplese*, 144 Ohio St.3d 89, 2015-Ohio-3628, ¶13. If, however, the absence of

3

jurisdiction is patent and unambiguous, a petitioner need not establish the third prong, the lack of an adequate remedy at law. *State ex rel. Sapp v. Franklin Cty. Court of Appeals*, 118 Ohio St.3d 368, 2008-Ohio-2637, ¶15.

{¶8} Ohio Edison has established the first prerequisite for the issuance of the writ. Respondent, the court of common pleas, has exercised judicial power in the underlying case by denying Ohio Edison's motion to dismiss Double K's complaint for lack of subject-matter jurisdiction and will continue to exercise judicial power as the case proceeds. We shall therefore proceed to analyze whether, as Ohio Edison asserts in its motion for summary judgment, the trial court patently and unambiguously lacks subject-matter jurisdiction.

{¶9} Subject-matter jurisdiction is the power conferred upon a court to hear and decide a case on the merits. *Morrison v. Steiner*, 32 Ohio St.2d 86 (1972), paragraph one of the syllabus. "'Jurisdiction does not relate to the *rights of the parties,* but to the *power of the court.'*" (Emphasis sic.) *State ex rel. Jones v. Suster*, 84 Ohio St.3d 70, 75 (1998), quoting *Executors of Long's Estate v. State*, 21 Ohio App. 412, 415 (1st Dist.1926).

{¶10} "The General Assembly has created a broad and comprehensive statutory scheme for regulating the business activities of public utilities." *Kazmaier Supermarket, Inc. v. Toledo Edison Co.,* 61 Ohio St.3d 147, 150 (1991). "R.C. Title 49 sets forth a detailed statutory framework for the regulation of utility service and the fixation of rates charged by public utilities to their customers." *Id.* As part of that framework, the General Assembly created PUCO, and "empowered it with broad authority to administer and enforce the provisions of Title 49." *Id.*

4

{¶11} "R.C. 4905.26 provides that PUCO shall determine any complaint by any person against a public utility alleging that any rate charged or service rendered is in any respect unjust, unreasonable, in violation of law, or inadequate." *Jones v. Ohio Edison Co.*, 11th Dist. Ashtabula No. 2014-A-0015, 2014-Ohio-5466, ¶9. The statutory scheme, consequently, gives PUCO "the right to adjudicate complaints involving customer rates and services." *Kazmaier, supra,* at 151. Further, where PUCO has jurisdiction as provided by this statute, that jurisdiction is exclusive and only subject to review by the Supreme Court of Ohio. *State ex rel. N. Ohio Tel. Co. v. Winter,* 23 Ohio St.2d 6 (1970), paragraph one of the syllabus. The detailed procedure for filing rate and/or service complaints set forth in R.C. 4905.26 expresses the intention of the General Assembly that such powers were to be vested solely in PUCO. *Winter, supra,* at 9.

{¶12} Courts, however, retain limited subject-matter jurisdiction over "pure tort" claims and certain contract actions involving public utilities. *State ex rel. The Illuminating Co. v. Cuyahoga Cty. Court of Common Pleas,* 97 Ohio St.3d 69, 2002-Ohio-5312, ¶21. Therefore, we must examine whether Double K's claim is subject to the exclusive jurisdiction of PUCO or is a pure tort claim within the jurisdiction of the common pleas court. *Id.* at ¶21. "'[C]asting the allegations in the complaint to sound in tort * * * is not sufficient to confer jurisdiction upon a trial court' when the basic claim is one that the commission has exclusive jurisdiction to resolve." *Id.,* quoting *Higgins v. Columbia Gas of Ohio, Inc.,* 136 Ohio App.3d 198, 202 (7th Dist.2000). Accordingly, courts must look to the *substance of the allegations* in the complaint to determine the proper jurisdiction.

5

*Allstate Ins. Co. v. Cleveland Electric Illuminating Co.,* 119 Ohio St.3d 301, 2008-Ohio-3917, ¶9.

{¶13} Further, while "trial courts determine their own jurisdiction," such determinations can be challenged. *Id.* at ¶11. In *Allstate,* the Court adopted a two-part test to assist courts in deciding when a trial court, rather than PUCO, has jurisdiction over a case involving a public utility alleged to have committed a tort, i.e., a "pure tort." Under this test, a court asks (1) whether PUCO's administrative expertise is required to resolve the issue in dispute, and (2) whether the act complained of constitutes a practice normally authorized by the utility. If the answer to either question is "no," the claim is one for a pure tort and is not within PUCO's exclusive jurisdiction. *Id.* at ¶11-13. Thus, the answer to both questions must be yes in order for the claim to fall within PUCO's jurisdiction.

{¶14} **Analysis**

{¶15} In support of its motion for summary judgment, Ohio Edison argues that although Double K couched its complaint in terms of negligence, the allegation asserted a claim arising from Ohio Edison's alleged failure to provide appropriate electrical voltage and failure to minimize or eliminate neutral-to-earth voltages - matters which constitute service complaints which are within the exclusive jurisdiction of PUCO. It maintains there is no genuine issue of material fact that the expertise of PUCO is required to resolve the dispute concerning the electrical phenomena relating to the distribution of electricity of which Double K complains; and, it argues there is no triable issue regarding whether the distribution of electricity, including the attendant

6

phenomena at the essence of Double K's complaint, constitute a practice normally authorized by electric utilities.

**{¶16} I. Is PUCO's expertise required to resolve the issue in dispute?**

{¶17} The issue of whether Ohio Edison provided faulty service in voltage maintenance and frequency is expressly governed by Ohio Edison's tariff on file with and approved by PUCO. The General Assembly has given PUCO statutory authority to review and approve tariffs. *Migden–Ostrander v. Pub. Util. Comm.,* 102 Ohio St.3d 451, 2004-Ohio-3924, ¶8, fn. 5. "Public utility tariffs are books or compilations of printed materials filed by public utilities with, and approved by, [PUCO] that contain schedules of rates and charges, rules and regulations, and standards for service." *Id.*

{¶18} In *Hull v. Columbia Gas of Ohio,* 110 Ohio St.3d 96, 2006-Ohio-3666, the Supreme Court of Ohio held, "'it is readily apparent that the General Assembly has provided for commission oversight of filed tariffs, including the right to adjudicate complaints involving customer rates and services.'" *Id.* at ¶20, quoting *Kazmaier, supra,* at 151.

{¶19} Section IV(B) of Ohio Edison's tariff provides:

{¶20} **Continuity.** The Company will endeavor, but does not guarantee, to furnish a continuous supply of electric energy and to maintain voltage and frequency within reasonable limits. The Company shall not be liable for damages which the customer may sustain due to variations in electric service characteristics * * *. (Emphasis sic.)

{¶21} Moreover, Section X(B) of the tariff provides:

{¶22} **Limitation on Liability.** The Company shall not be liable for any loss, cost, damage, or expense that the customer may sustain by reason of damage to or destruction of any property, including the loss of use thereof, arising out of, or in any manner connected with, interruptions in service, variations in service characteristics, high or low voltage * * * whether such damages are caused by or involve

any fault or failure of the Company or otherwise except such damages that are caused by or due to the willful and wanton misconduct of the Company. (Emphasis sic.)

{¶23} Claims which "require a consideration of statutes and regulations administered and enforced by [PUCO]" are outside the jurisdiction of the trial court and within PUCO's exclusive jurisdiction. *The Illuminating Co., supra,* at ¶21.

{¶24} As noted above, R.C. 4905.26 states that PUCO shall determine any complaint against a public utility alleging that any service rendered is in any way unjust, unreasonable, in violation of law, or inadequate. Ohio Edison's tariffs indicate it will provide voltage and maintain the same within reasonable limits, but it will not be liable for damage due to interruptions or variations in service characteristics, or for high or low voltage absent willful and wanton misconduct.

{¶25} Double K's complaint alleges damages resulting from stray or neutral-to-earth voltage as well as a brownout condition. "Neutral-to-earth voltage is the measurement at any given time and place of electricity trying to return from where it came, either through the earth or through the neutral wire. Technically, it is the measurement of electricity moving through a conductor that has a resistance to remote earth." *Otte v. Dayton Power & Light Co.*, 37 Ohio St.3d 33, 34 (1988). A "brownout" is a period of low voltage. *Jones*, *supra*, at ¶30. Ohio Edison supplies voltage, as a service, and because both neutral-to-earth voltage and a brownout condition are related to voltage, the matters at issue require consideration of statutes and regulations administered by PUCO. *See The Illuminating Co., supra.* Thus, we conclude there is no genuine issue of material fact that PUCO's expertise is required to resolve whether the

8

voltage complaints at issue were in any way unjust, unreasonable, in violation of law or inadequate.

{¶26} **II. Do the actions complained of constitute a practice normally authorized by the utility?**

{¶27} We first point out that this court has previously concluded that a brownout condition is "clearly service-related." *Laforge v. Cleveland Elec. Illuminating Co.*, 115 Ohio App.3d 740, 741 (11th Dist.1996). And the tariffs provide (1) Ohio Edison will strive to provide continuous electrical energy and maintain reasonable frequency and (2) are not liable for damages due to variations in service characteristics. Hence, there is no genuine issue of material fact that the circumstances surrounding the brownout condition constitute a practice normally authorized by Ohio Edison.

{¶28} Neutral-to-earth voltage presents a more difficult question. In their memorandum in opposition to summary judgment, respondent does not directly address the two prongs of the *Allstate* test, but argue there is a genuine issue of material fact relating to the trial court's jurisdiction because at least one court has concluded "stray voltage" is not specifically regulated by PUCO regulations and thus is not necessarily a "service." *State ex re. Ohio Edison Co. v. Morris*, 5th Dist. Stark No. CA-6432, 1984 WL 7590. They further cite a case wherein the trial court exercised jurisdiction over, inter alia, alleged negligence arising from alleged abnormal stray voltage. *Barr v. Ohio Edison Co.*, 9th Dist. Summit No. 16629, 1995 WL 66351 (Feb. 17, 1995).

{¶29} Initially, it is not clear that the utility company in *Barr* moved to dismiss based upon subject-matter jurisdiction. In this respect, that case does not specifically inform our analysis.

9

{¶30} *Morris*, however, does present factual and procedural issues very similar to this matter. In *Morris*, the plaintiffs moved for damages, alleging installed electrical service was improperly grounded and their dairy barn and cattle were severely affected by stray voltage. The utility company filed a motion to dismiss, alleging the trial court lacked subject-matter jurisdiction. The trial court denied the motion and the utility company filed a petition for writ of prohibition. The utility company argued that the question of what are standard voltages and whether stray voltage is permissible and, if so, to what extent is it a "service characteristic" within PUCO's exclusive jurisdiction. *Id.* at *4. The Fifth District, however, pointed out that PUCO adopted no specific regulations dealing with stray voltage. As such, the court held the plaintiff's complaint "is not a complaint against a public utility charging that service[s] rendered is in any respect a violation of law within the meaning of R.C. 4905.26." *Id.* at *5. The court therefore determined the trial court did not patently lack jurisdiction and was empowered to judicially ascertain the legal rights of the parties.

{¶31} While the facts and issue in *Morris* are ostensibly the same as those in this matter, *Morris* was released well before the Ohio Supreme Court adopted the *Allstate* test and, of some import, its holding is not binding on this court. We consequently find the analysis of the *Morris* court was unduly narrow and unnecessarily rigid, especially in light of the broad and comprehensive nature of the statutory scheme regulating utilities. While the tariffs do not specifically address stray voltage, they do generally address the provision and regulation of voltage, of which stray voltage is a characteristic. "[T]he commission with its expert staff technicians familiar with the utility commission provisions" is in the best position to resolve issues relating to utility service

10

and its characteristics. *Kazmaier, supra*, at 153; *see also* Section IV(B), Ohio Edison tariff; *The Illuminating Co.*, *supra*. While stray voltage may not be practically viewed as a "service," i.e., the utility company does not endeavor to provide stray voltage, per se; still, stray voltage is a consequence of a service and, as a result, is a service characteristic within the purview of the tariffs. We therefore disagree with the conclusion in *Morris*, which essentially held that because the tariffs do not directly speak to the specific phenomena of stray voltage, it is not a matter within PUCO's exclusive jurisdiction.

{¶32} Moreover, in *Jones, supra*, this court pointed out that "'"[w]hen one suffers damages related to events that are purely electrical, * * * the claim is service-related and under PUCO's jurisdiction."'" *Id.* at ¶30, quoting *Valentin v. Ohio Edison,* 7th Dist. Mahoning No. 11 MA 93, 2012-Ohio-2437, ¶12, *Pro Se Commercial Properties v. Illuminating Co.,* 8th Dist. Cuyahoga No. 92961, 2010-Ohio-516, ¶15. The *Jones*, *Valentin*, and *Pro Se* cases each addressed situations in which a power surge occurred and the courts concluded such "purely electrical" events were within the exclusive jurisdiction of PUCO. *Laforge, supra*, addressed a period of low voltage, a brownout, and this court concluded such an event was also within PUCO's exclusive jurisdiction. Similar to a power surge or a low voltage event, stray voltage is a "purely electrical" event. We therefore conclude stray voltage is a characteristic of the service provided by Ohio Edison and thus falls squarely within the jurisdiction of PUCO. Accordingly, there is no genuine issue of material fact that the actions complained of involve practices normally authorized by Ohio Edison.

11

{¶33} One final point requires attention. Even though the trial court does not have jurisdiction over the issue of whether a violation has occurred, the court of common pleas *does* possess jurisdiction over the issue of damages if PUCO finds a violation. Specifically, if PUCO determines a violation occurred, R.C. 4905.61 authorizes a suit for treble damages against the utility company. In *Milligan v. Ohio bell Tel. Co.*, 56 Ohio St.2d 191 (1978), the Supreme Court held: "A Court of Common Pleas is without jurisdiction to hear a claim seeking treble damages pursuant to R.C. 4905.61 absent a prior determination by the Public Utilities Commission that there was in fact a violation of Chapters 4901, 4903, 4905, 4907, 4909, 4921 or 4925, or an order of the Commission." *Id.* at paragraph one of the syllabus. Accordingly, an allegation that a utility service is unjust, unreasonable, in violation of the law, or inadequate must be first heard by PUCO; if PUCO determines a violation occurs, the prevailing party may file a complaint for treble damages, per R.C. 4905.61, because PUCO has no power to grant monetary damages under that statute. *Milligan*, *supra*; see also *State ex rel. Dayton Power & Light Co. v. Kistler*, 57 Ohio St.2d 21, 23 (1979) ("'Bringing suit for treble damages against a utility, therefore is dependent upon a finding that there was a violation of a specific statute * * * or an order of the commission. Because such finding is within the exclusive jurisdiction of the commission, * * * it follows that before a Court of Common Pleas has jurisdiction to hear a complaint for treble damages under R.C. 4905.61, there first must be a determination by the commission that a violation has in fact taken place.'")

{¶34} This bifurcated process was the basis for Ohio Edison's motion to dismiss the damages aspect of Double K's complaint that was originally filed before PUCO.

12

PUCO granted dismissal of that aspect of the complaint, but before it could hear the allegations vis-à-vis Double K's service complaints, the complaint was dismissed and filed in the lower court.

{¶35} **Conclusion**

{¶36} In light of the foregoing analysis, we conclude there is no genuine issue of material fact that respondent patently and unambiguously lacks jurisdiction to preside over Double K's complaint. Ohio Edison's petition for writ of prohibition is therefore granted.

CYNTHIA WESTCOTT RICE, J., TIMOTHY P. CANNON, J., MARY JANE TRAPP, J., concur.