HULL, APPELLEE, *v.* COLUMBIA GAS OF OHIO, APPELLANT, ET AL.

[Cite as *Hull v. Columbia Gas of Ohio,*
110 Ohio St.3d 96, 2006-Ohio-3666.]

(No. 2005–1033—Submitted March 15, 2006—Decided August 2, 2006.)

O'CONNOR, J.

{¶ 1} This is a discretionary appeal accepted as a case of public or great general interest pursuant to S.Ct.Prac.R. II(1)(A)(3). The issue presented to this court is whether the Public Utilities Commission of Ohio ("PUCO") has sole jurisdiction over Columbia Gas of Ohio ("Columbia"), as a public utility (a natural gas company), in a dispute over the price of gas that arose when a competing Customer Choice supplier of natural gas, which was not subject to PUCO jurisdiction and regulation, failed to meet its contractual supplier obligations to a customer.

STATEMENT OF FACTS

Overview and Procedural History

{¶ 2} Appellant, Columbia, is a public utility that provides natural gas service in Ohio. Appellee, Charles Hull, filed this action against both Columbia and codefendant Energy Max of N.E. Ohio, Inc., challenging the rate he was being charged by Columbia for providing natural gas to his home. Hull also claimed to represent a class of similarly situated individuals and requested class action status for the lawsuit.

{¶ 3} Columbia moved to dismiss Hull's complaint under Civ.R. 12(B)(1) for lack of subject-matter jurisdiction. The Lucas County Common Pleas Court ruled that Hull's claim against Columbia fell within the exclusive jurisdiction of the PUCO and dismissed the complaint against Columbia.

{¶ 4} Following Columbia's dismissal from the action, Hull pursued his claim against defendant Energy Max, which failed to appear to defend itself. The trial court granted a default judgment against Energy Max in favor of Hull and the class. In its April 29, 2004 final judgment entry, the trial court incorporated its prior dismissal of the complaint against Columbia.

{¶ 5} Hull appealed the trial court's dismissal of Columbia. On April 29, 2005, the Sixth District Court of Appeals reversed the trial court in a two-to-one decision and held that the trial court had jurisdiction to adjudicate the dispute between Columbia and its customers. On October 5, 2005, this court accepted Columbia's appeal.

## The PUCO's Approval of Columbia's Customer Choice Program

{¶ 6} Columbia's Customer Choice program has been in operation since 1997. The tariffs on file with the PUCO detailing the specifics of the Customer Choice program and the accompanying rate schedules were approved by the PUCO and have been kept open to public inspection in accordance with R.C. 4905.30.

{¶ 7} Columbia implemented its Customer Choice program to provide customers with a choice of buying their natural gas from sources other than Columbia. Under the program, a Columbia customer may select a supplier or marketer other than Columbia to supply the customer's natural gas. Columbia, however, remains responsible for transportation and delivery of the gas. The marketer selected by the customer contracts directly with the customer to deliver the gas to Columbia Gas, and Columbia, in turn, delivers the gas to the customer.

{¶ 8} To be eligible as a gas supplier in the Customer Choice program, a marketer must be approved in accordance with Columbia's tariff on file with the PUCO. In September 1999, Energy Max was approved to participate as a marketer in the Customer Choice program under Columbia's tariff.

## Hull's Contract with Energy Max

{¶ 9} On February 28, 2000, Hull, a new customer of Columbia, received a letter from Energy Max offering to sell natural gas to him for one year at a fixed rate. In its letter, Energy Max enclosed a "Columbia Gas of Ohio Customer Choice Enrollment Card & Gas Purchase Agreement," which Hull completed, thereby accepting Energy Max's offer to supply his natural gas. Hull acknowledged in his deposition that he had read the contract with Energy Max before he

signed it. He understood that the agreement was solely between himself and Energy Max and that Columbia was not a party to the contract.

## Energy Max's Breach of Its Contract with Hull

{¶ 10} Beginning on August 5, 2000, Energy Max breached its supply contract by failing to deliver natural gas to Columbia Gas for Energy Max's customers as required under the Customer Choice program.

{¶ 11} Under its tariff on file with the PUCO, Columbia has the right to terminate a marketer's participation in the Customer Choice program if the marketer fails to deliver natural gas for the marketer's customers. When a marketer is terminated, the tariff further provides that customers in the terminated marketer's group shall revert to Columbia's sales and service, unless the customer joins another marketer's customer group.

{¶ 12} Columbia notified Hull in writing that effective August 30, 2000, Energy Max's participation in the Customer Choice program was terminated because Energy Max had failed to deliver natural gas for its customers' use. Columbia's August 30, 2000 letter stated, "You will continue to receive gas service from Columbia unless you select another supplier," and "You may contract with another supplier at any time."

{¶ 13} Hull complained to the PUCO about Energy Max's breach of contract. The PUCO responded that it did "not have clear jurisdiction over marketers" and that "[c]ustomers may sue Energy Max for breach of contract." Hull then filed a formal complaint with the PUCO but withdrew it after initiating this litigation in the Lucas County Common Pleas Court against both Energy Max and Columbia.

## A QUESTION OF LAW

### Kazmaier and the R.C. Title 49 Regime

{¶ 14} The question of law presented by these undisputed facts is whether the PUCO has sole subject-matter jurisdiction over Columbia as to the rates it charges. Columbia argues that the PUCO indeed has exclusive jurisdiction, citing *Kazmaier Supermarket, Inc. v. Toledo Edison Co.* (1991), 61 Ohio St.3d 147, 150–153, 573 N.E.2d 655. *Kazmaier* is particularly instructive with respect to its examination of the public policy embodied in the General Assembly's enactments of the statutory regime dealing with public utilities:

{¶ 15} "The General Assembly has created a broad and comprehensive statutory scheme for regulating the business activities of public utilities. R.C. Title 49 sets forth a detailed statutory framework for the regulation of utility service and the fixation of rates charged by public utilities to their customers. As part of that scheme, the legislature created the Public Utilities Commission and empowered it with broad authority to administer and enforce the provisions of Title 49.

The commission may fix, amend, alter or suspend rates charged by public utilities to their customers. R.C. 4909.15 and 4909.16. Every public utility in Ohio is required to file, for commission review and approval, tariff schedules that detail rates, charges and classifications for every service offered. R.C. 4905.30. And a utility must charge rates that are in accordance with tariffs approved by, and on file with, the commission. R.C. 4905.22.

{¶ 16} "The General Assembly has by statute pronounced the public policy of the state that the broad and complete control of public utilities shall be within the administrative agency, the Public Utilities Commission. This court has recognized this legislative mandate.

{¶ 17} " 'There is perhaps no field of business subject to greater statutory and governmental control than that of the public utility. This is particularly true of the rates of a public utility. Such rates are set and regulated by a general statutory plan in which the Public Utilities Commission is vested with the authority to determine rates in the first instance, and in which the authority to review such rates is vested exclusively in the Supreme Court by Section 4903.12, Revised Code. * * * ' *Keco Industries, Inc. v. Cincinnati & Suburban Bell Tel. Co.* (1957), 166 Ohio St. 254, 256, 2 O.O.2d 85, 86, 141 N.E.2d 465, 467; see, also, *Inland Steel Dev. Corp. v. Pub. Util. Comm.* (1977), 49 Ohio St.2d 284, 288–289, 3 O.O.3d 435, 437–438, 361 N.E.2d 240, 243–244; *Akron v. Pub. Util. Comm.* (1948), 149 Ohio St. 347, 359, 37 O.O. 39, 44, 78 N.E.2d 890, 897.

{¶ 18} "The General Assembly has provided a rather specific procedure by which customers may challenge rates or charges of a public utility that are 'in any respect' unjust, unreasonable, or unlawful, and has designated the commission as the appropriate forum before which such claims are to be heard. R.C. 4905.26 * * *.

{¶ 19} " * * *

{¶ 20} "Accordingly, it is readily apparent that the General Assembly has provided for commission oversight of filed tariffs, including the right to adjudicate complaints involving customer rates and services. This court has previously had occasion to discuss such authority of the commission. In *State, ex rel. Northern Ohio Tel. Co., v. Winter* (1970), 23 Ohio St.2d 6, 9, 52 O.O.2d 29, 31, 260 N.E.2d 827, 829, it was stated:

{¶ 21} " ' * * * The General Assembly has enacted an entire chapter of the Revised Code dealing with public utilities, requiring, *inter alia,* adequate service, and providing for permissible rates and review procedure. *E.g.,* R.C. 4905.04, 4905.06, 4905.22, 4905.231 and 4905.381. Further, R.C. 4905.26 provides a detailed procedure for filing service complaints. *This comprehensive scheme expresses the intention of the General Assembly that such powers were to be vested solely in the Commission.* As this court said in *State, ex rel. Ohio Bell*

*Telephone Co., v. Court of Common Pleas* (1934), 128 Ohio St. 553 at 557 [1 O.O. 99 at 100–101, 192 N.E. 787 at 788–789]:

{¶ 22} " 'The jurisdiction specifically conferred by statute upon the Public Utilities Commission over public utilities of the state, including the regulation of rates and the enforcement of repayment of money collected * * * during the pendency of the proceeding * * * is so complete, comprehensive and adequate as to warrant the conclusion that it is likewise exclusive.' (Emphasis added.)

{¶ 23} " * * *

{¶ 24} "In regard to administrative agency exclusivity, generally, this court has recognized that where the General Assembly has enacted a complete and comprehensive statutory scheme governing review by an administrative agency, exclusive jurisdiction is vested within such agency." (Citation omitted.)

{¶ 25} *Kazmaier* and the authorities it cites establish the following: (1) Every public utility in Ohio, including Columbia, is required to file with the PUCO, for its review and approval, tariff schedules that detail rates, charges, and classifications for every service offered, and (2) the public utility must charge the rates that are approved by and on file with the PUCO. All Columbia rates charged to Hull for residential gas service were approved by the PUCO as contained in Columbia's tariff on file with the PUCO.

{¶ 26} Hull does not dispute these determinations or the conclusion to be drawn from them that the PUCO has exclusive jurisdiction to oversee filed tariffs and to adjudicate complaints concerning rates to be charged to its customers. Indeed, Hull's complaint filed in the trial court initially contained three counts. The third count was explicitly based on "public utility law," and Hull later voluntarily dismissed it.

{¶ 27} Hull distinguishes his claim from those considered by the *Kazmaier* court by characterizing it as a pure contract claim rather than a challenge of an approved tariff rate. He concedes that if he were attacking the rates established by the Customer Choice program, he would be within the PUCO's exclusive jurisdiction. He says: "In the case at bar, Mr. Hull did not challenge the rate he contracted to pay the defendants pursuant to the Columbia Customer Choice Program embedded in Columbia's tariff with the PUCO. Quite the contrary, he wishes to *enforce* the contract price established by that approved rate." (Emphasis sic.)

### *Harnishfeger* and the "Pure Contract/Tort Claim"

{¶ 28} Hull seems to be saying that he agrees that after Energy Max's default, he was required to pay Columbia its approved tariff rate for the gas supplied to him by Columbia but that on a pure contract theory of recovery, he is entitled to recovery from Columbia and Energy Max jointly for the difference between

Columbia's tariff rate of $.63 per ccf (hundred cubic feet) of gas and Energy Max's lower contract rate of $.36 per ccf of gas.

{¶ 29} In support of his argument that there is an exception to the general rule of exclusivity of PUCO jurisdiction based on a pure contract claim, Hull cites *State ex rel. Ohio Power Co. v. Harnishfeger* (1980), 64 Ohio St.2d 9, 10, 18 O.O.3d 130, 412 N.E.2d 395. There, this court said:

{¶ 30} "Admittedly, the power of the Public Utilities Commission under the legislative scheme of R.C. Title 49 is comprehensive and plenary. (See, especially, R.C. 4905.26 and 4905.61.) However, this does not mean that exclusive original jurisdiction over all complaints of individuals against public utilities is lodged in the commission.

{¶ 31} " ' * * * [C]ourts of this state are available to supplicants who have claims sounding in contract against a corporation coming under the authority of the Public Utilities Commission. *New Bremen v. Pub. Util. Comm.* (1921), 103 Ohio St. 23 [132 N.E. 162]; *Southgate Development Corp. v. Columbia Gas Transmission Corp.* (1976), 48 Ohio St.2d 211 [2 O.O.3d 393, 358 N.E.2d 526].' *State, ex rel. Dayton Power & Light Co., v. Riley* (1978), 53 Ohio St.2d 168, 169 [7 O.O.3d 317, 373 N.E.2d 385]. As noted in *New Bremen, supra,* at pages 30–31, 132 N.E. 162, '[t]he public utilities commission is in no sense a court. It has no power to judicially ascertain and determine legal rights and liabilities, or adjudicate controversies between parties as to contract rights or property rights.' This court, also stated in *Milligan v. Ohio Bell Tel. Co.* (1978), 56 Ohio St.2d 191, at page 195 [10 O.O.3d 352, 383 N.E.2d 575], that 'claims sounding in contract or tort have been regarded as reviewable in the Court of Common Pleas, although brought against corporations subject to the authority of the commission. * * *' See, also, *Richard A. Berjian, D.O., Inc., v. Ohio Bell Tel. Co* (1978), 54 Ohio St.2d 147 [8 O.O.3d 149, 375 N.E.2d 410]."

{¶ 32} While acknowledging the existence of the contract-claim exception carved out in *Harnishfeger,* Columbia points out that none of the cases cited by Hull involved an alleged breach of contract by conduct that was, as here, expressly approved by the PUCO under the terms of a tariff filed with the PUCO. Hull argues that *State ex rel. Dayton Power & Light Co. v. Riley* (1978), 53 Ohio St.2d 168, 373 N.E.2d 385, is factually similar to this case. In *Riley,* the Dayton Power & Light Company was accused of breaching a contract by converting a customer's propane to its own use. Conversion of propane is not authorized by the PUCO.

{¶ 33} In another case cited by Hull, *Southgate Dev. Corp. v. Columbia Gas Transm. Corp.* (1976) 48 Ohio St.2d 211, 2 O.O.3d 393, 358 N.E.2d 526, the defendant in the alleged contract action, unlike Columbia in this case, was not even subject to regulation by the PUCO. It is undisputed that Columbia is

subject to regulation by the PUCO, and the *Southgate* decision is therefore inapplicable.

{¶ 34} This court recently confirmed its earlier holding that " '[c]asting the allegations in the complaint to sound in tort or contract is not sufficient to confer jurisdiction upon a trial court' when the basic claim is one that the commission has exclusive jurisdiction to resolve." *State ex rel. Illum. Co. v. Cuyahoga Cty. Court of Common Pleas*, 97 Ohio St.3d 69, 2002-Ohio-5312, 776 N.E.2d 92, ¶ 21, quoting *Higgins v. Columbia Gas of Ohio, Inc.* (2000), 136 Ohio App.3d 198, 202, 736 N.E.2d 92. Hull refers to the claim that in his view gives rise to common pleas court jurisdiction as a pure contract claim. The court of appeals agreed. However, the dispute in this case is the antithesis of the pure contract case envisioned by the exception to the PUCO's jurisdiction. A pure contract case is one having nothing to do with the utility's service or rates—such as perhaps a dispute between a public utility and one of its employees or a dispute between a public utility and its uniform supplier. This case involves only the rates charged by Columbia for natural gas.

Significance of the Enactment of R.C. 4929.20 through 4929.30

{¶ 35} The General Assembly enacted R.C. 4929.20 through 4929.30, effective June 26, 2001. These statutory provisions gave the PUCO certain authority and regulatory jurisdiction over governmental aggregators and retail natural gas suppliers and marketers, such as Energy Max, that did not unquestionably exist prior to their effective date. Hull argues that because the acts he complains of occurred before the effective date of the new statutory scheme, the PUCO had no jurisdiction over those acts. Thus, implicitly, the common pleas court did have jurisdiction.

{¶ 36} Whether Hull is correct is of no consequence in this appeal. The acts about which he complains involved Energy Max's breach of its natural gas supply contract, over which the Lucas County Court of Common Pleas assumed jurisdiction without objection from Columbia. Whether the PUCO had any jurisdiction over retail gas suppliers such as Energy Max prior to June 26, 2001, is of no importance when it is considered that Hull is seeking compensation from Columbia, which is a statutory public utility over which the PUCO had exclusive jurisdiction both before and after June 26, 2001.

{¶ 37} The fact that the PUCO may have lacked jurisdiction over marketers like Energy Max when Hull contracted with Energy Max does not alter Ohio law that the PUCO has exclusive jurisdiction over public utilities like Columbia to adjudicate rate or service disputes.

{¶ 38} The PUCO has always had exclusive jurisdiction to adjudicate rate disputes involving public utilities like Columbia. And here, the entirety of Hull's

complaint against Columbia is the rate he believes he should have been charged for his natural gas service. This matter falls squarely within the PUCO's exclusive jurisdiction, subject to review only by this court.

## CONCLUSION

{¶ 39} We conclude that the appellate court erred in holding that Hull's claim against Columbia was a pure contract claim over which the common pleas court had jurisdiction.

{¶ 40} Despite Hull's attempts to characterize it otherwise, his claim against Columbia was that Columbia should have charged for the natural gas supplied to Hull at the Energy Max contract rate, which was lower than the Columbia tariff rate that Columbia in fact charged. Although Energy Max defaulted on its gas supply contract, Columbia did nothing wrong. Columbia is a public utility, which Energy Max was not. As such, Columbia was and is subject to the regulatory jurisdiction of the PUCO. That regulation required Columbia to file PUCO-approved tariffs containing rate schedules, obtain approval of its Customer Choice program, and abide by the terms and conditions of its tariffs and the Customer Choice program, all of which Columbia did. It could not legally have provided service to Hull or charged for that service other than it did.

{¶ 41} While Hull characterizes his complaint against Columbia as a pure contract claim, it is not. His complaint against Columbia is that the rate he was charged exceeded the Energy Max contract rate and, thus, that he was over-charged. A dispute so founded is squarely within the exclusive jurisdiction of the PUCO.

{¶ 42} Thus, we reiterate our conclusion that the appellate court erred in its reversal of the trial court's dismissal of Hull's claims against Columbia for lack of subject-matter jurisdiction and reverse the judgment of the Sixth District Court of Appeals.

*Judgment reversed.*

MOYER, C.J., RESNICK, LUNDBERG STRATTON, O'DONNELL and LANZINGER, JJ., concur.

PFEIFER, J., dissents.

---

**PFEIFER, J., dissenting.**

{¶ 43} To put it charitably, the plaintiff's cause of action is problematic. Under the plaintiff's theory, incumbent public utilities take on financial responsibility for independent marketers that fail to live up to the contracts that the marketers entered into with consumers. Although his claims are questionable legally, the

plaintiff brings causes of action sounding in contract and agency. As this court held in *State ex rel. Illum. Co. v. Cuyahoga Cty. Court of Common Pleas,* 97 Ohio St.3d 69, 2002-Ohio-5312, 776 N.E.2d 92, at ¶ 20, "courts retain limited subject-matter jurisdiction over pure common-law tort and certain contract actions involving utilities regulated by the commission." This is not a case about the appropriateness of the rate charged by Columbia; it is about whether Columbia, because of the nature of its relationship with Energy Max, must be held to the contract entered into by Energy Max and the plaintiff. The appropriate place to resolve that legal issue, an issue not dependent on knowledge of the intricacies of the commission's tariff structure, is in the common pleas court. I would affirm the judgment of the appellate court.

---

Albrechta & Coble, John A. Coble, and Joseph F. Albrechta, for appellee.

Cooper & Walinski, L.P.A., David Rodman Cooper, and Cary Rodman Cooper; and Rodney W. Anderson, for appellant.