[Cite as *Werner Properties, Inc. v. Gasearch, L.L.C.*, 2023-Ohio-1049.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

WERNER PROPERTIES, INC., ET AL., :

    Plaintiffs-Appellants, :

                                 No. 111850

    v. :

GASEARCH, LLC, ET AL., :

    Defendants-Appellees. :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** March 30, 2023

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-21-955721

---

### *Appearances:*

Kaufman, Drozdowski & Grendell, LLC, and Evan T. Byron, *for appellants*.

Black, McCuskey, Souers & Arbaugh, James M. Wherley, Jr., and Randolph L. Snow, *for appellees* Gasearch, LLC and Susan Faith.

Taft Stettinius & Hollister, LLP, Adrian D. Thompson, and Julie A. Crocker; McGuireWoods, LLP, Gregory J. Krock, *for appellee* The East Ohio Gas Company d.b.a. Dominion Energy Ohio.

KATHLEEN ANN KEOUGH, J.:

{¶ 1} Plaintiff-appellant, Werner Properties, Inc., on behalf of itself and a putative class of similarly situated persons and entities, appeals from the trial court's judgment granting the motion to dismiss of defendant-appellee, East Ohio Gas Company d.b.a. Dominion Energy Ohio ("DEO"), and sua sponte dismissing defendants-appellees ("Gasearch"), L.L.C. and Susan Faith ("Faith") and by implication the Doe defendants. For the reasons that follow, we affirm.

## I.  Background

{¶ 2} The underlying question in this appeal is whether the common pleas court had jurisdiction over Werner's claims regarding services provided by defendants-appellees as part of DEO's Energy Choice Program.

{¶ 3} With the approval of the Public Utilities Commission of Ohio ("PUCO"), certain natural gas companies have established energy choice programs in which customers shop for energy options from a group of competitive suppliers certified by the PUCO. *See* R.C. 4929.04.  Under DEO's Energy Choice Program, a DEO customer may select a supplier other than DEO to supply the customer's natural gas.  DEO, however, remains responsible for the transportation and delivery of the gas.  The supplier selected by the customer contracts directly with the customer to supply the gas and DEO, in turn, delivers the gas to the customer.  The consumer pays for the gas provided by its selected supplier and the local utility company's distribution costs.  *In re Complaint of Wingo v. Nationwide Energy Partners*, 163 Ohio St.3d 208, 2020-Ohio-5583, 169 N.E.3d 617, ¶ 13, fn. 3.

{¶ 4} To participate in an energy choice program, gas suppliers must first be certified by the PUCO and then comply with extensive PUCO regulations. *See* Ohio Adm.Code 4901:1-27 through 4901:1-34. Suppliers must also agree to comply with the terms and conditions of the local natural gas company's PUCO-approved tariff.[1] *Id.*

{¶ 5} As alleged in Werner's second amended complaint ("SAC"), in March 2012, Werner entered into an Energy Choice Natural Gas Sales Agreement ("NGA") with Gasearch in which it agreed to purchase its natural gas from Gasearch. SAC at ¶ 41-42; exhibit No. 5. Thereafter, Werner and Gasearch renewed the NGA five times between 2012 and 2018. *Id.* at ¶ 43-38; exhibit Nos. 5-10.

{¶ 6} In the NGAs, Gasearch agreed to "sell and deliver 100% of [Werner's] natural gas requirements to [Werner's facilities]." *Id.* at ¶ 47; exhibit Nos. 5-10. Although DEO was not a party to and did not sign the agreements, the NGAs provided that DEO would submit bills on a monthly basis to Werner that would include charges for the natural gas supplied by Gasearch and the transportation services provided by DEO. *Id.*; exhibit Nos. 5-10.

{¶ 7} Werner and Gasearch executed their most recent NGA in April 2020. *Id.* at ¶ 46; exhibit No. 10. The April 2020 NGA required Werner to pay $2.72 per one thousand cubic feet ("mcf") that Gasearch supplied. *Id.* Approximately 18

---

[1] "Public utility tariffs are books or compilations of printed materials filed by public utilities with, and approved by, [the PUCO] that contain schedules of rates and charges, rules and regulations, and standards for service." *Jones v. Ohio Edison Co.*, 2014-Ohio-5466, 26 N.E.3d 824, ¶ 16 (11th Dist.).

months later, on October 28, 2021, Gasearch sent an email to all its customers informing them that it was shutting down its business operations and would not satisfy any of its outstanding contracts. *Id*. at ¶ 49; exhibit No. 11. Werner thereafter entered into a contract with another PUCO-approved supplier in the Energy Choice Program that required it to pay $4.09 per mcf for its gas. *Id*. at ¶ 52-53.

{¶ 8} Upon learning of the email that Gasearch sent to its customers, DEO filed an application with the PUCO seeking to terminate Gasearch's participation in the Energy Choice Program. *Id*. at ¶ 56; exhibit No. 14. The PUCO approved the application on November 3, 2021, and ordered DEO to "effectuate an orderly transition of Gasearch's customers" but "delay the termination of Gasearch's participation in the Energy Choice Program until all existing customers have been transitioned * * * to another supplier or supply option." *Id*.; exhibit No. 18. The PUCO stated that it would "continue to monitor this situation and take any additional action deemed necessary." *Id*. After receiving approval from the PUCO, DEO removed Gasearch from the list of suppliers certified to participate in the Energy Choice Program. *Id*. at ¶ 59.

{¶ 9} In the SAC, Werner asserted claims for breach of contract, fraud, and deceptive trade practices against Gasearch; fraud and piercing the corporate veil against Faith, Gasearch's sole owner; and breach of fiduciary duty, negligent misrepresentation, negligence, and principal/agency liability against DEO. It also named as defendants "John/Jane Does 1-10" but did not assert any claims against them.

{¶ 10} In support of its allegations against DEO, Werner alleged in the SAC that it had obtained a copy of the "actual agreement" between DEO and Gasearch, entitled "Service Agreement — Energy Choice Pooling Service," regarding the financial, operational, and creditworthiness requirements imposed by DEO on Gasearch. *Id.* at ¶ 22-23; Exhibit A. Werner alleged that under the agreement, DEO was contractually required but failed to monitor Gasearch's financial condition, creditworthiness, and operations to ensure that Gasearch would be capable of satisfying its contracts with its customers. *Id.* at ¶ 21-27, 112-117. Werner contended that as a result, it and the putative class members were entitled to recover monetary damages in the amount of the increased prices they were required to pay to purchase replacement gas from other PUCO-approved suppliers through March 2023, when the Gasearch agreement was set to expire. *Id.* at ¶ 62(b) and (c).

{¶ 11} DEO filed a motion to dismiss the SAC pursuant to Civ.R. 12(B)(1) and (6) for lack of jurisdiction and failure to state a claim upon which relief can be granted. In its motion, DEO asserted that Exhibit A attached to Werner's SAC was not a signed contract between DEO and Gasearch but rather, a portion of the DEO Tariff that provides the general terms and conditions that govern the conduct of both DEO and all suppliers in the Energy Choice Program.

{¶ 12} DEO argued that contrary to Werner's allegation in the SAC that DEO was responsible for certifying the suppliers in the Energy Choice Program, the DEO Tariff expressly states that the PUCO certifies the suppliers who can participate in the program. *See* Exhibit A, § 24.1 ("Supplier shall be certified by the PUCO in

accordance with the PUCO's requirements for Certification of Governmental Aggregators and Retail Natural Gas Suppliers as set forth in OAC Chapter 4901:1-27.") DEO pointed out that the Tariff also contains provisions that govern DEO's conduct regarding the certified suppliers. For example, the Tariff (1) requires DEO to apply and enforce the Tariff in a nondiscriminatory manner; *id.* at § 24.4(a) and (b); (2) prohibits DEO from giving any supplier preference over another supplier; *id.* at § 24.4(c); (3) requires DEO to process all similar requests for transportation services in the same manner; *id.* at § 24.4(d); and (4) prohibits DEO from communicating "the idea that any advantage might accrue in the use of [DEO's] services as a result of dealing with any Supplier." *Id.* at § 24.4(j).

{¶ 13} Relying on *Hull v. Columbia Gas of Ohio*, 110 Ohio St.3d 96, 2006-Ohio-3666, 850 N.E.2d 1190, DEO argued that the trial court lacked jurisdiction over the matter because the Supreme Court of Ohio decided in *Hull* that the PUCO has exclusive jurisdiction over disputes involving the amount a customer must pay for replacement gas under a natural gas company's energy choice program if the supplier fails to satisfy its obligations to that customer. DEO argued further that Werner could not avoid the PUCO's exclusive jurisdiction by couching its service and rate-related claims as tort claims because regardless of the label attached to the claims, the claims involved the services that DEO was supposed to provide under the Energy Choice Program, and the PUCO has exclusive jurisdiction to resolve disputes involving those services. Finally, DEO argued that even if the trial court

had jurisdiction, Werner's SAC failed to state a claim under which relief can be granted.

{¶ 14} In its brief in opposition to DEO's motion, Werner acknowledged that as a public utility, DEO is regulated by Ohio's Revised Code and Administrative Code, that DEO's provision of services under the Energy Choice Program is governed by the DEO Tariff, and that the PUCO is responsible for regulating issues regarding that Tariff. (Werner's brief in opposition, p. 2, 7.) Nevertheless, Werner argued that the trial court should deny DEO's motion because this case "is not an administrative or regulatory matter at all" but instead, "a basic civil action premised on the common law of Ohio." (Appellant's brief in opposition, p. 9.) Werner also argued that its case was distinguishable from *Hull*.

{¶ 15} The trial court granted DEO's motion, finding that it lacked jurisdiction over Werner's claims because they are within the exclusive jurisdiction of the PUCO. The trial court found that DEO's obligations to its customers are governed by PUCO regulations and that, in fact, the PUCO had already exercised jurisdiction over Gasearch's breach of its supply contracts with DEO customers. The trial court further found that, as in *Hull*, Werner sought to calculate damages based on the difference between its increased gas cost after Gasearch's default less its expected cost under its contract with Gasearch, and that as determined by the Ohio Supreme Court in *Hull,* the PUCO has exclusive jurisdiction to adjudicate complaints regarding the rates to be charged a public utility's customers. Finally, the trial court found that it was undisputed that Gasearch was a PUCO-certified

natural gas supplier and because the PUCO has exclusive jurisdiction to consider complaints against such suppliers, the trial court was likewise without jurisdiction to consider Werner's claims against Gasearch and Faith. Accordingly, the court dismissed Werner's claims against DEO, Gasearch, and Faith with prejudice.[2] This appeal followed.

## II. Appellate Jurisdiction

{¶ 16} In addition to naming Gasearch, Faith, and DEO as defendants in the SAC, Werner also named as defendants "John/Jane Does 1-10." The SAC asserted that the Doe defendants were "either individuals and/or entities wholly or partially owned by and/or affiliated with Ms. Faith and/or Gasearch that aided, abetted, conspired, or otherwise participated in the misconduct set forth herein." SAC at ¶ 9. Werner alleged that it would amend the SAC upon discovering their identities. *Id.*

{¶ 17} Under Civ.R. 15(D), "when the plaintiff does not know the name of a defendant, that defendant may be designated in a pleading or proceeding by any name or description." Then, "when the name is discovered, the pleading or proceeding must be amended accordingly." *Id.* Under Civ.R. 3(A), an action is commenced by filing a complaint if service is obtained within one year from such filing "upon a named defendant * * * or upon a defendant identified by a fictitious name whose name is later corrected pursuant to Civ.R. 15(D)."

---

[2] The trial court did not address DEO's Civ.R. 12(B)(6) argument that the SAC should be dismissed because Werner failed to state a claim upon which relief can be granted.

{¶ 18} Applying these rules, this court has recognized that when the one-year period for naming and serving John Doe defendants has expired, a judgment rendered as to other defendants may be considered final and appealable because the action never commenced against the John Doe defendants. *Kohout v. Church of St. Rocco Corp.*, 8th Dist. Cuyahoga No. 88969, 2008-Ohio-1819, ¶ 7. However, when the one-year period for obtaining service on the John Doe defendants has not yet passed and the plaintiff has not expressly abandoned the claims against the John Doe defendants, a judgment in favor of other defendants that does not include the "no just reason for delay" language of Civ.R. 54(B) is not final and appealable.[3] *Id.*

{¶ 19} The trial court's dismissal entry dismissed the claims against DEO, Gasearch, and Faith but did not mention the Doe defendants. Furthermore, the one-year period for serving the Doe defendants had not yet passed when the trial court entered its order of dismissal. Accordingly, this court, sua sponte, invited the parties to file supplemental briefs regarding whether the trial court's judgment is a final appealable order such that we have jurisdiction over the appeal. We conclude that the trial court's order is final and appealable.

{¶ 20} First, although Werner identified the Doe defendants in the SAC as individuals or entities owned or affiliated with Gasearch and Faith who allegedly "aided, abetted, conspired or otherwise participated in the misconduct" described in

---

[3] Under Civ.R. 54(B), "when multiple parties are involved, the court may enter final judgment as to * * * fewer than all of the parties only upon an express determination that there is no just reason for delay."

the SAC, it did not actually assert any claims against them. The Doe defendants are not named in the counts for breach of contract, fraud, and deceptive trade practices against Gasearch and Faith nor, in fact, in any counts in the complaint.

{¶ 21} Second, even assuming the SAC asserted claims against the Doe defendants, the trial court's order implicitly resolved the claims against them such that they do not remain pending for adjudication. The Ohio Supreme Court has recognized that an order that is silent as to a particular claim does not necessarily leave that claim unresolved because courts sometimes resolve ancillary claims by implication. *Gen. Accident Ins. Co. v. Ins. Co. of N. Am.*, 44 Ohio St.3d 17, 21, 540 N.E.2d 266 (1989) (concluding that in rejecting the appellant's claim that certain insurance companies owed a duty to defend, the trial court implicitly rejected a claim that those insurers owed a duty to indemnify); *Wise v. Gursky*, 66 Ohio St.2d 241, 421 N.E.2d 150 (1981) (jury verdict in favor of defendant implicitly rendered the claims of defendant's third-party complaint moot); *see also Sec. Natl. Bank & Trust Co. v. Jones*, 2d Dist. Clark No. 2000-CA-59, 2001 Ohio App. LEXIS 3236, 6 (July 6, 2001) (trial court's grant of summary judgment in favor of the plaintiff implicitly rejected the defendant's counterclaim).

{¶ 22} In its order, the trial court determined that because Gasearch was a PUCO-certified supplier under the Energy Choice Program, Werner's claims against Gasearch and its owner, Faith, are subject to the PUCO's exclusive jurisdiction. That determination necessarily also applies to any claims that Werner might assert against the Doe defendants because if, as the trial court found, the PUCO has

exclusive jurisdiction over claims involving Gasearch's and Faith's alleged misconduct, it necessarily also has exclusive jurisdiction over claims against the Doe defendants as entities that allegedly aided and abetted Gasearch and Faith in their alleged misconduct. Thus, it is apparent that although the trial court's dismissal order does not specifically address Werner's claims against the Doe defendants, the order implicitly dismissed any claims against them.

{¶ 23} Finally, and most importantly, even if the trial court's order did not implicitly dismiss the claims against the Doe defendants, it contains the requisite Civ.R. 54(B) language, expressly stating that there is "no just cause for delay" of an immediate appeal in a case involving multiple claims and parties. Accordingly, we find that the trial court's order is a final appealable order.

### III. Law and Analysis

#### A. Werner's Claims Against DEO

{¶ 24} In its first assignment of error, Werner contends that the trial court erred in dismissing its claims against DEO based on its determination the PUCO has exclusive jurisdiction over the claims. Werner contends that its claims against DEO are not related to DEO's natural gas service, rates, and payment for same — which Werner concedes are regulatory matters falling within the PUCO's exclusive jurisdiction — but rather are merely common-law tort claims that do not require the PUCO's expertise to decide. He also contends that *Hull*, the case upon which the trial court relied in concluding it lacked jurisdiction, is distinguishable from this case.

{¶ 25} "Subject matter jurisdiction is the power conferred on a court to decide a particular matter on its merits and render an enforceable judgment over the action." *Udelson v. Udelson*, 8th Dist. Cuyahoga No. 92717, 2009-Ohio-6462, ¶ 13. In considering its jurisdiction pursuant to a Civ.R. 12(B)(1) motion to dismiss, the trial court "determines whether the claim raises any action cognizable in that court." *Moore v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 18AP-599, 2019-Ohio-767, ¶ 4. The trial court is not confined to the allegations of the complaint but may consider material pertinent to its inquiry without converting the motion into one for summary judgment. *Vedder v. Warrensville Hts.*, 8th Dist. Cuyahoga No. 81005, 2002-Ohio-5567, ¶ 15. Appellate courts apply a de novo standard of review to questions of subject matter jurisdiction. *Id.*

{¶ 26} "The General Assembly has created a broad and comprehensive statutory scheme for regulating the business activities of public utilities." *Kazmaier Supermarket, Inc. v. Toledo Edison Co.*, 61 Ohio St.3d 147, 150, 573 N.E.2d 665 (1991). By enacting statutory provisions requiring public utilities to file and adhere to rate schedules, forbidding discrimination among their customers, prohibiting free service, and providing a detailed procedure for service and rate complaints, the General Assembly has lodged exclusive jurisdiction in such matters in the PUCO, subject to review by the Supreme Court of Ohio. *State ex rel. N. Ohio Tel. Co. v. Winter*, 23 Ohio St.2d 6, 260 N.E.2d 827 (1970), paragraph one of the syllabus. Thus, in general, the "PUCO has exclusive jurisdiction over most matters concerning

public utilities." *Allstate Ins. Co. v. Cleveland Elec. Illum. Co.*, 119 Ohio St.3d 301, 2008-Ohio-3917, 893 N.E.2d 824, ¶ 5.

{¶ 27} Notwithstanding the PUCO's exclusive jurisdiction over service-related matters, courts retain subject-matter jurisdiction over "pure tort and contract claims" against utilities regulated by the PUCO. *Id.* at ¶ 6, citing *State ex rel. Ohio Edison Co. v. Shaker*, 68 Ohio St.3d 209, 211, 625 N.E.2d 608 (1994). "The mere fact that a plaintiff casts its allegations to sound in tort, however, is insufficient to confer jurisdiction upon the common pleas court." *Pro Se Commercial Properties v. Illum. Co.*, 8th Dist. Cuyahoga No. 92961, 2010-Ohio-516, ¶ 9, citing *State ex rel. Illum. Co. v. Cuyahoga Cty. Court of Common Pleas*, 97 Ohio St.3d 69, 2002-Ohio-5312, 776 N.E.2d 92, ¶ 21, "Instead, it is the substance of the claims that is controlling; if the claims are manifestly service-related, they are with the exclusive jurisdiction of the commission." *Pro Se Commercial Properties* at *id.*

{¶ 28} In *Allstate*, the Supreme Court adopted a two-part test to determine whether a claim is service-related or involves a common-law tort. The first part of the test asks whether the PUCO's administrative expertise is required to resolve the issue in dispute. *Allstate* at ¶ 12. The second part of the test is whether the act complained of constitutes a practice normally authorized by the utility. *Id.* If the answer to either question is no, the claim is not within the PUCO's exclusive jurisdiction. *Id.*

{¶ 29} Applying this test to the case before us, it is apparent that the claims Werner attempts to style as torts relate to service under the DEO Tariff over which

the PUCO has particular expertise and that involve standard industry practices. The gravamen of the SAC is Werner's contention that Werner and the purported class members paid too much for replacement gas after Gasearch failed to satisfy its contractual obligation as a supplier under DEO's Energy Choice Program. In describing DEO's tortious conduct, Werner asserts that because the DEO Tariff required DEO to monitor the creditworthiness and financial wherewithal of suppliers, DEO assumed a duty to customers to ensure that those suppliers could satisfy their supply contracts. Werner and the putative class members seek to recover economic losses arising from the increased cost of obtaining natural gas following Gasearch's default of its obligations under its supply contracts.

{¶ 30} With respect to the first part of the *Allstate* test, we find that the PUCO's expertise is required to assess the monitoring services that Werner contends DEO should have provided. If DEO should have known that Gasearch might have difficulty satisfying its contracts, the adjudicating tribunal will have to determine what actions DEO would have been permitted to take in response. Importantly, the DEO Tariff governs both the information that Gasearch was required to provide so that DEO could monitor its creditworthiness and the information about Gasearch that DEO would be permitted to convey to customers. *See* Exhibit A to SAC, § 23 and 24.4. The tribunal will have to ensure that the actions that Werner contends DEO should have taken would not have violated the DEO Tariff by giving one supplier preference over another supplier. In addition, the tribunal will have to assess the extent to which DEO would have needed the PUCO's approval to

undertake the actions that Werner contends DEO should have taken. *See* Ohio Adm.Code 4901:1-27-13(F) (requiring the PUCO's approval to take certain actions in response to a supplier's default). These assessments require the PUCO's unique administrative expertise.

{¶ 31} Moreover, although Werner's claims are that DEO failed to adequately monitor Gasearch's financial wherewithal, Ohio law requires the PUCO to evaluate the "financial capability" of retail gas suppliers like Gasearch. R.C. 4929.02(A); *see also* Ohio Adm.Code 4901:1-2705 (requiring suppliers to provide various forms of financial information as part of their certification applications). In short, the duties that DEO purportedly violated were either promulgated by order of the PUCO or otherwise entrusted by law to the PUCO's jurisdiction. Thus, the PUCO's expertise is required to assess purported violations of those duties.

{¶ 32} With respect to the second part of the *Allstate* test, it is apparent that Werner's claims involve services and practices normally authorized by public utilities. DEO's responsibilities to both its retail natural gas supplier and its customers if that supplier defaults on its contracts are governed by regulation (*see* Ohio Adm.Code 4901:1-13-14) and the DEO Tariff. Similarly, the manner in which DEO would have been permitted to respond to any customer that might have contacted DEO about Gasearch's financial status is governed by the DEO Tariff. The fact that Ohio statutes and regulations govern the issues involved in a lawsuit demonstrates that the practice is normally authorized by the public utility. *See*, *e.g.*, *Jones*, 2014-Ohio-5466, 26 N.E.3d 824 at ¶ 33-34 (11th Dist.) (because repairing

and replacing power lines are governed by the Ohio Administrative Code and a PUCO-approved tariff, those actions are "practices normally authorized by" the utility); *DiFranco v. FirstEnergy Corp.*, 134 Ohio St.3d 144, 2012-Ohio-5455, 980 N.E.2d 996, ¶ 36 ("Offering discounted tariff rates to certain customers is a practice normally engaged in by the utility. In fact, the practice is specifically authorized by statute."). Here, the DEO Tariff addresses in detail the relationship between DEO and suppliers like Gasearch, thereby confirming that DEO's supposedly actionable conduct is "normally authorized."

{¶ 33} In light of our analysis under the *Allstate* test, we find that the trial court did not err in determining that the PUCO has exclusive jurisdiction over this matter, despite Werner's attempts to categorize his claims as common-law tort claims. Indeed, as the trial court found, the Ohio Supreme Court's ruling in *Hull*, wherein the Supreme Court held that the PUCO has exclusive jurisdiction over disputes involving the amount a customer must pay for replacement gas under a natural gas company's energy choice program if the supplier fails to satisfy its obligations to that customer, is directly on point.

{¶ 34} In *Hull*, in accordance with a customer choice program implemented by public-utility company Columbia Gas of Ohio that gave customers a choice to purchase their natural gas from sources other than Columbia, Hull elected to purchase his natural gas from one of the suppliers that the PUCO had certified. *Hull*, 110 Ohio St.3d 96, 2006-Ohio-3666, 850 N.E.2d 1190 at ¶ 6-9. That supplier breached its contract with the customer. *Id*. at ¶ 10. Because the cost to procure

replacement gas from Columbia exceeded the price that the defaulting supplier had agreed to charge, Hull sued Columbia under what he called a "pure contract theory of recovery" to recover the increased cost he incurred in purchasing replacement gas at a higher price. *Id*. at ¶ 28. In dismissing the case for lack of jurisdiction, the Supreme Court of Ohio emphasized that "a pure contract case is one having nothing to do with a utility's services or rates." *Id*. at ¶ 34. The Supreme Court further explained that

> [w]hile Hull characterizes his complaint against Columbia as a pure contract claim, it is not. His complaint against Columbia is that the rate he was charged exceeded the Energy Max contract rate and, thus, that he was overcharged. A dispute so founded is squarely within the exclusive jurisdiction of the PUCO.

*Id*. at ¶ 40-41.

{¶ 35} Werner's claims are virtually identical to those in *Hull*. Werner alleges that it contracted to purchase its gas from Gasearch in accordance with DEO's Energy Choice Program, that Gasearch breached the contract, and that Werner subsequently paid more for replacement gas than it would have paid under its contract with Gasearch. SAC at ¶ 19-20, 40-54. As in *Hull*, Werner seeks to recover damages from DEO in the amount of the increased cost that it and the putative class members paid to obtain replacement gas from alternative suppliers when Gasearch defaulted on its contractual obligations. *Id*. at ¶ 62(b) and (c). In short, Werner contends that DEO's allegedly faulty "monitoring services" caused the purported class members to pay too much for replacement gas when Gasearch failed

to satisfy its contractual obligations as a supplier under the Energy Choice Program and that DEO should be liable for the increased cost of that replacement gas.

{¶ 36} Despite Werner's efforts to distinguish its claim, it is indistinguishable from the claim raised in *Hull*. Werner's contention that its NGAs with Gasearch somehow make this case different from *Hull* because the contract in *Hull* was between the customer and Columbia — the public utility — rather than the alternative supplier, is irrelevant. Just as Columbia was not a party to the contract with Hull, DEO was not a party to Werner's contracts with Gasearch. Likewise, the fact that Werner characterizes its claims as tort claims instead of the contract claim asserted in *Hull* is meaningless. The *Hull* Court held that the PUCO has exclusive jurisdiction over all claims that involve a utility's services or rates, regardless of how the plaintiff characterizes those claims. *Hull*, 110 Ohio St.3d 96, 2006-3066, 850 N.E.2d 1190 at ¶ 34, 40-41.

{¶ 37} Werner's assertion that this case is different from *Hull* because the plaintiff therein sought to compel Columbia to provide natural gas, unlike the demand in this case, is also without merit. The customer in *Hull* sought the same relief that Werner seeks: damages in the amount of the additional money that it and the putative class members paid an alternative supplier when their initial supplier defaulted under its supplier contracts. *Id*. at ¶ 28, 41. Furthermore, despite Werner's contention otherwise, the fact that one justice issued a dissent in *Hull* does not permit this court to disregard the majority's ruling.

{¶ 38} Finally, Werner's assertion that the PUCO does not have jurisdiction because it is not a court and cannot award damages is without merit. If the PUCO finds a violation, Werner can seek to recover monetary damages in court. *See*, *e.g.*, *State ex rel. Ohio Edison Co. v. Trumbull Cty. Ct. of Common Pleas*, 11th Dist. Trumbull No. 2019-T-0062, 2019-Ohio-5313, ¶ 33 ("Even though the trial court does not have jurisdiction over the issue of whether a violation has occurred, the court of common pleas does have jurisdiction over the issue of damages if the PUCO finds a violation."); *Jones*, 2014-Ohio-5466, 26 N.E.3d 824 at ¶ 38 ("Thus, if appellants are able to establish their claims before the PUCO * * * appellants can then seek an award of treble damages against them in court.").

{¶ 39} Werner's claim that DEO's allegedly faulty monitoring services caused it and the putative class members to pay too much for replacement gas when Gasearch failed to satisfy its obligations as a supplier under the Energy Choice Program and that DEO should therefore be liable for the increased cost of the replacement gas is indistinguishable from the claim in *Hull* that the court found to be within the PUCO's exclusive jurisdiction. Accordingly, the trial court did not err in finding, in reliance on *Hull*, that the PUCO has exclusive jurisdiction over this matter and dismissing Werner's claims against DEO. In fact, the PUCO has already exercised jurisdiction over issues surrounding Gasearch's default of its supply obligations to its customers and announced its intention to remain involved by taking "any additional action deemed necessary." SAC, exhibit No. 18 at ¶ 10. The first assignment of error is overruled.

### B. Werner's Claims Against Gasearch and Faith

**{¶ 40}** In its second assignment of error, Werner contends that the trial court erred in sua sponte dismissing its claims against Gasearch and Faith for lack of subject-matter jurisdiction. We disagree.

**{¶ 41}** First, Werner's assertion that *Interstate Gas Supply, Inc. v. Calex Corp.*, 10th Dist. Franklin No. 04AP-980, 2006-Ohio-638, "demonstrates, as a matter of law, that common pleas courts of Ohio have jurisdiction to hear contract and tort actions against natural gas suppliers (like Gasearch and Faith)" is wholly without merit. There is no discussion whatsoever in that case about the PUCO or its jurisdiction. Furthermore, the case involved claims by Interstate against two defendants with whom it had contracted to supply gas. When the defendants did not pay Interstate's invoices, Interstate sued for breach of contract and amount due on an account. Thus, the claims asserted by Interstate did not relate to its service or rates but were "pure contract" claims over which the PUCO does not have jurisdiction.

**{¶ 42}** As noted by the Ohio Supreme Court in *Hull*, by enacting R.C. 4929.20 through 4929.30, the General Assembly gave the PUCO authority and regulatory jurisdiction over governmental aggregators and retail natural gas suppliers such as Gasearch. *Hull*, 110 Ohio St.3d 96, 2006-Ohio-3666, 850 N.E.2d 1190 at ¶ 35. *See, e.g.*, R.C. 4929.24(A)(1) ("The public utilities commission has jurisdiction under section 4905.26 of the Revised Code, upon complaint of any person * * * regarding the provision by a natural gas supplier subject to certification

\* \* \* of any service for which it is subject to certification."). It is undisputed that Gasearch was a PUCO-certified natural gas supplier. SAC at ¶ 6, 29. Furthermore, despite Werner's characterization otherwise, its claims against Gasearch and Faith are neither contract nor tort claims; they are service-related claims that fall squarely within the PUCO's exclusive jurisdiction. In fact, as discussed above, the PUCO has already exercised its jurisdiction over Gasearch's default of its supply agreements with DEO's customers.

{¶ 43} The trial court did not err in dismissing Werner's claims against Gasearch and Faith for lack of subject-matter jurisdiction. The second assignment of error is therefore overruled.

{¶ 44} Judgment affirmed.

It is ordered that appellees recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

KATHLEEN ANN KEOUGH, JUDGE

ANITA LASTER MAYS, A.J., and
EMANUELLA D. GROVES, J., CONCUR